David Edwin WIEDE, Appellant

v.

The STATE of Texas, Appellee.

No. 03–03–00267–CR.

Court of Appeals of Texas,
Austin.

April 14, 2005.

John Fahle, Carter and Fahle, San Antonio, for Appellant.

James F. Booher, Asst. Crim. Dist. Atty., San Marcos, for State.

Before Chief Justice LAW, Justices PATTERSON and PURYEAR.

## OPINION

DAVID PURYEAR, Justice.

In 1997, a jury found David Edwin Wiede guilty of possession of methamphetamine. Tex. Health & Safety Code Ann. § 481.115(d) (West 2003). The court sentenced Wiede to ten years' imprisonment; imposition of the sentence was suspended and he was placed on community supervision for ten years. In 2002, the State moved to revoke his community supervision, alleging that he had violated the terms of his community supervision by again possessing methamphetamine. Wiede pleaded not true to the allegations and moved to suppress the evidence as the product of an unlawful search of his car. The district court denied Wiede's motion, admitted the evidence, found the State's allegations to be true, and sentenced him to ten years in prison. On appeal, Wiede challenges the revocation of his community supervision contending that the district court erred by admitting the methamphetamine into evidence because (1) the State failed to prove the chain of custody of the drugs admitted and (2) the drugs were the fruit of an unlawful search of his car. The State responds that there was sufficient proof of chain of custody and that the search was lawful because (1) there was no reasonable expectation of privacy in Wiede's wrecked vehicle in light of the statutory authority of the police to investigate a traffic accident, and (2) there was probable cause to believe the car contained contraband.

Wiede raised the same contentions in his appeal of the revocation of his community supervision in a separate adjudication in Caldwell County. See Wiede v. State, 157 S.W.3d 87, 2005 Tex.App. LEXIS 452 (Tex.App.-Austin 2005, pet. filed) (Wiede I ). In Wiede I, the State based its motion to revoke on the same allegation of possession of methamphetamine presented in this appeal. See id. 157 S.W.3d at 94–95. For essentially the same reasons stated in our opinion in Wiede I, we reverse the judgment of the district court and remand for further proceedings.

The record in the present case differs slightly from the record in Wiede I, but the basic account of Wiede's car accident and the subsequent search of his car is sufficiently set forth in our prior opinion. We will limit our discussion to those aspects of the record which differ from the evidence presented in Wiede I and whether those differences have an effect on our determination of the lawfulness of the search. We will also address the State's contention that Wiede's lessened expectation of privacy in his car, along with the statutory authority for the police to investigate the accident, combine to permit the search.

## Standard of Review

Although the standard of review in a revocation proceeding is whether the trial court abused its discretion in finding that the State proved a violation of the conditions by a preponderance of the evidence, the evidence on which a trial court bases its determination must be properly admitted in accordance with established search and seizure law. Wiede I, 157 S.W.3d at 94–95, 2005 Tex.App. LEXIS 452, at *10–11; see Gordon v. State, 4 S.W.3d 32, 35 (Tex.App.-El Paso 1999, no pet.) (overlapping standards of review when considering suppression of evidence in decision to revoke probation); State v. Barnett, 790 S.W.2d 662 (Tex.App.-Austin 1990, no pet.) (applying standard of review for suppression in revocation of probation determination). We review the district court's decision to admit the methamphetamine discovered in the contested search giving almost total deference to the district court's determination of historical facts, and we review the district court's applica-

tion of search and seizure law *de novo.* *Balentine v. State,* 71 S.W.3d 763, 768 (Tex.Crim.App.2002). When, as here, the district court does not make explicit findings of historical facts, we review the evidence in a light most favorable to the district court's ruling and assume that the district court made implicit findings of fact supported in the record. *Id.* We must affirm the district court's ruling on a motion to suppress if it can be upheld on any valid theory of law applicable to the case—even if the district court did not base its decision on the applicable theory. *State v. Steelman,* 93 S.W.3d 102, 107 (Tex.Crim. App.2002); *Romero v. State,* 800 S.W.2d 539, 543–544 (Tex.Crim.App.1990).

**Relevant Facts**

Our review of the record points to three significant differences between the evidence presented in this case and that found insufficient to support a valid search in *Wiede I.* The first difference is in the witness Roy Tambunga's account of Wiede's traffic accident and Wiede's actions inside his car while awaiting medical care. In *Wiede I,* Tambunga gave only a brief description of the accident and was not asked about its cause. By contrast, in this case Tambunga clarified that the truck made a left turn in front of Wiede. When asked directly by the trial judge whether the truck failed to yield the right of way, Tambunga responded:

> Truthfully, I think that you should know that when you're driving a big truck like that, you can't move very fast. I think he pulled out and didn't give enough room for the traffic, but I also think that the white car was traveling a little bit faster than the speed limit.

When compared to the record in *Wiede I,* Tambunga's testimony more clearly reflects that Wiede's collision with the truck was at least as attributable to the actions of the truck driver as to either recklessness or intoxication on the part of Wiede.

Tambunga's testimony also differs in his description of Wiede's furtive gesture. In *Wiede I,* Tambunga testified that he never saw what Wiede placed between the seat and the console of the car because Wiede's hand was closed all the way around the item. In this case, Tambunga testified that he did see what Wiede was hiding:

> It appeared to be—it was covered by his hand for the most part and it was—it appeared to be made out of plastic, clear plastic similar to a sandwich bag.

At trial, Tambunga was uncertain if he told the officers at the scene that what he saw was plastic. However, in reaching his decision to admit the evidence the trial judge observed that Tambunga must have told the officer who conducted the search because he informed the officer that the first plastic bag removed from the car was too small to be the item he saw Wiede conceal.

The third relevant distinction between this record and *Wiede I* is in Officer McGuairt's account of his actions after the methamphetamine was discovered in Wiede's vehicle. When asked if he notified EMS that he had found the methamphetamine, McGuairt replied:

> Okay. I do recall. I do recall. After the substance was located—I do recall this. I did walk up to the back door of the EMS. It was still there. I remember even knocking on the door and having a paramedic come to the back door and I advised him. I didn't show them where it had been located.

McGuairt did not testify in *Wiede I* that he informed EMS of the discovery of the methamphetamine. When asked on cross examination in that case whether he had requested that EMS test Wiede for controlled substances, McGuairt stated that

this would have been the duty of another officer.

Although the majority of our discussion of the search of Wiede's car in *Wiede I* remains unaffected, the differences in the record between the two hearings require additional discussion of whether the search of Wiede's car was supported by probable cause or was justified as part of the officers' community caretaking function. We will also discuss the statutory authority of the police to investigate a traffic accident and its relevance to the lawfulness of the search.

**Diminished Expectation of Privacy and Transportation Code**

The State contends that Wiede had no reasonable expectation of privacy in his car after colliding with the truck and, therefore, the search did not violate his Fourth Amendment rights. Citing a provision of the transportation code that gives police the authority to investigate traffic accidents, the State argues that the owner of a vehicle involved in a collision has reason to believe the car will be removed from the roadway and a search of its contents conducted. Thus, there is no reasonable expectation of privacy in the vehicle and the search was proper.

We find that the cases cited in the State's brief discussing the diminished expectation of privacy in a vehicle do not support the proposition that there is no reasonable expectation of privacy once a vehicle is disabled in a traffic accident.[1] Clearly, much of the contents of a vehicle are in plain view and open to inspection in the course of the investigation of a traffic

accident. However, the Supreme Court has consistently held that the Fourth Amendment applies to motor vehicles and that the police must have probable cause to search. *See Carroll,* 267 U.S. at 149, 45 S.Ct. 280 (warrantless search of automobile not unreasonable under Fourth Amendment if supported by probable cause); *Houghton,* 526 U.S. at 300, 119 S.Ct. 1297; *see also New York v. Class,* 475 U.S. 106, 112, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) ("A citizen does not surrender all the protections of the Fourth Amendment by entering an automobile."). The Supreme Court recognized the diminished privacy interest and inherent mobility of motor vehicles only by eliminating the requirement that police obtain a warrant prior to searching a vehicle. *See Wyoming v. Houghton,* 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999); *Carroll v. United States,* 267 U.S. 132, 147, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ The transportation code also does not grant the police additional authority to search a vehicle. The State cites section 550.041(a) of the transportation code:

A peace officer who is notified of a motor vehicle accident resulting in injury to or death of a person or property damage to an apparent extent of at least $1000 may investigate the accident and file justifiable charges relating to the accident without regard to whether the accident occurred on property to which this chapter applies.

*Id.* § 550.41(a). We find no authority construing this statute—certainly none that would permit a peace officer to search a

---

1.  None of the cases cited as authority for the diminished expectation of privacy in a vehicle deal with a search similar to the one in this case. *See Cardwell v. Lewis,* 417 U.S. 583, 592–93, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (observation of paint scrapings on outside of car); *South Dakota v. Opperman,* 428 U.S. 364, 375–76, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (inventory search); *California v. Carney,* 471 U.S. 386, 394, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) (no warrant required for search of motor home); *Robertson v. State,* 541 S.W.2d 608, 611 (Tex.Crim.App.1976) (inventory search).

vehicle outside of the well delineated constraints of the Fourth Amendment. In fact, our review of the history of section 550.041(a) suggests that the provision was intended merely to clarify a peace officer's authority to investigate some traffic accidents which occur on private property rather than on the public roadways. *See* Act of August 28, 1967, 60th Leg., R.S., ch. 526, 1967 Tex. Gen. Laws 1175, § 43(A) (recodified and amended 1995) (current version at Tex. Transp. Code Ann. § 550.041). Prior to its recodification in the transportation code, the statute specified that a peace officer was permitted to investigate some accidents which occurred on private property but not others:

> without regard to whether the accident occurred on a public street or highway ... or on private property commonly used by the public such as a supermarket or shopping center parking lots ... [i]t is specifically provided, however, that this Section shall not apply to accidents occurring on privately owned residential parking areas or on privately owned parking lots where a fee is charged for the privilege of parking or storing a motor vehicle.

*Id.* § 43(A). The caption of this provision also explains that the purpose of the act is to extend the traffic laws to certain private property. *Id.* Nothing in the statute indicates that it was intended to establish an independent power to investigate accidents beyond the ordinary community caretaking functions of the police.

In light of the language and history of section 550.41(a), we cannot conclude that the statute was intended to expand the authority of the police so as to permit the search of a vehicle absent probable cause. In any event, a statutory provision can not erase Fourth Amendment protections. Although we acknowledge that an individual possesses a reduced expectation of privacy

in a motor vehicle, this diminished privacy interest has been recognized in well established search and seizure law. We will not further construe this reduced expectation of privacy to dispense with the Fourth Amendment's probable cause requirement altogether when a vehicle is involved in a traffic accident. *See Class*, 475 U.S. at 112, 106 S.Ct. 960; *Wiede I*, 157 S.W.3d at 98–99, 2005 Tex.App. LEXIS 452, at *23–24.

**Probable Cause**

The State also asserts that the police had probable cause to believe Wiede's car contained contraband. In *Wiede I*, we concluded that the evidence presented did not demonstrate that the police had probable cause to believe that Wiede's vehicle contained evidence of a crime. *See* 157 S.W.3d at 99, 2005 Tex.App. LEXIS 452, at *24. We explained that Wiede's furtive gesture in the context of a vehicle collision amounted at most to reasonable suspicion and that the officer's duty to investigate a traffic accident would not elevate that suspicion to probable cause. *Id.* The additional facts in the present record do not change that conclusion.

█ The most significant difference in the record in this case with regard to probable cause is the fact that Tambunga testified that he saw clear plastic in Wiede's hand when Wiede made his furtive gesture. The trial court also found that this observation must have been communicated to the officer conducting the search. The State points to the comments of the trial court that, "with officers seeing dope in plastic bags all the time," Tambunga's observations represented probable cause for police to believe Wiede possessed drugs. However, the court of criminal appeals has repeatedly held that there is nothing inherently suspicious about a plastic bag. *See Gonzales v. State*, 648 S.W.2d 684, 686 (Tex.Crim.App.1983); *Sullivan v.*

*State,* 626 S.W.2d 58, 60 (Tex.Crim.App. 1981) ("a clear plastic bag is not an object that is inherently dangerous, contraband, or stolen goods"); *Duncan v. State,* 549 S.W.2d 730, 732 (Tex.Crim.App.1977). For a plastic bag to gain the significance attributed to it by the trial judge, there must be evidence that the seizing officer knew at the time of the search that drugs were commonly packaged in plastic bags *and* suspicious circumstances that would lead an officer to believe the bag contained drugs. *Sullivan,* 626 S.W.2d at 60; *see Guzman v. State,* 955 S.W.2d 85, 90 (Tex. Crim.App.1997). Here, the State was unable to even identify the officer who conducted the search and there is nothing in the record establishing any officer's knowledge that plastic bags are ordinarily used to contain drugs. Furthermore, there are no suspicious circumstances in the record that would lead an officer to believe that Wiede was in possession of drugs.

Tambunga's comments regarding the cause of the accident also weaken the State's argument on probable cause when compared to *Wiede I.* Tambunga essentially dispelled any notion that Wiede's collision with the truck was evidence of intoxication. Tambunga testified that the truck pulled out in front of Wiede's vehicle without leaving enough room for traffic and that Wiede was only traveling a "little bit" faster than the 55 or 60 mile per hour speed limit.

We conclude that, even when viewed most favorably to the district court's decision, the totality of the circumstances presented at the hearing did not demonstrate that the unidentified police officer had probable cause to believe that Wiede's vehicle contained evidence of a crime. The additional evidence that Tambunga may

have seen a plastic bag, without any evidence in the record of suspicious circumstances or of the searching officer's experience and knowledge of the use of such materials as packaging for drugs, does not lead us to a different conclusion than in *Wiede I. See Guzman,* 955 S.W.2d at 90; *Sullivan,* 626 S.W.2d at 60.

**Community Caretaking**

We thoroughly discussed the application of the community caretaking doctrine to the search in *Wiede I* and concluded that it did not justify the search. Although the record in this case is somewhat different, this difference only affects our analysis of the application of the emergency doctrine component of the police's community caretaking function.[2] However, we remain convinced that the record does not demonstrate that the search of Wiede's car was conducted in furtherance of the officers' community caretaking function.

The most significant variation in the record between this case and *Wiede I* is Officer McGuairt's testimony regarding his interaction with EMS. In *Wiede I,* we examined the State's contention that the search of Wiede's car was justified out of concern that Wiede might be under the influence of drugs and that producing the drugs was necessary to assist in his medical treatment. *See* 157 S.W.3d at 99–100, 2005 Tex.App. LEXIS 452, at *26. McGuairt testified that Tambunga's description of Wiede's furtive gesture provoked the thought that he should inform medical personnel if what had been removed from his pocket was found to be a controlled substance. In rejecting the claim we noted:

McGuairt did not inform the medical personnel of the possibility Wiede was

---

2. As in *Wiede I,* the record does not support a finding that an inventory search was conducted.

intoxicated, did not tell anyone else to tell them, and did not know whether anyone told them.

*Id.* 157 S.W.3d at 101, at *31. In the present case, McGuairt did not testify that he was concerned for Wiede's medical care. He characterized the search as an investigation of the accident as well as a criminal investigation. However, McGuairt did testify that, upon locating the drugs, he showed them to EMS personnel.

■ Although we cannot explain the disparity in the record between these two hearings conducted within a month of each other, we find that McGuairt's actions after the discovery of the methamphetamine has little relevance in determining the motivation of the officers prior to conducting the search. A search is justified under the emergency doctrine if, at its onset, (1) the officer's actions were totally divorced from the detection, investigation, or acquisition of evidence, (2) there was an immediate, objectively reasonable belief that the search is necessary in order to protect or preserve life or avoid serious injury, and (3) the scope of the search was strictly circumscribed by the facts of the emergency. *Laney v. State*, 117 S.W.3d 854, 861–62 (Tex.Crim. App.2003); *Gonzalez v. State*, 148 S.W.3d 702, 708 (Tex.App.-Austin 2004, no pet. h.). We apply an objective standard of reasonableness and independently scrutinize the facts without regard to the subjective conclusions of the police. *Gonzalez*, 148 S.W.3d at 707.

■ Applying this standard, we focus only on those facts known to the officers at the time of the search. Even if McGuairt's actions in showing the drugs to EMS is evidence of his concern for Wiede's safety, at its inception the search must have been based on an "objectively reasonable belief" that it was necessary to protect or preserve life or avoid serious injury. *See*

*Laney*, 117 S.W.3d at 861–62; *Gonzalez*, 148 S.W.3d at 708. As we explained earlier in this opinion and in *Wiede I*, the facts known to the police demonstrated only a reasonable suspicion that there was contraband in the car. Such speculation is insufficient to demonstrate an objectively reasonable belief under the emergency doctrine. *See Gonzalez*, 148 S.W.3d at 709. Furthermore, McGuairt admitted, and the record clearly reflects that the search was conducted, at least in part, as a criminal investigation. Thus, the search was not totally divorced from the detection, investigation, or acquisition of evidence. *See Laney*, 117 S.W.3d at 861–62; *Gonzalez*, 148 S.W.3d at 708. We hold that the search was not justified under the emergency doctrine.

■ Because the State did not establish that there was either probable cause to support the search of Wiede's vehicle, or that the search was justified under an exception to the Fourth Amendment's probable cause requirement, we hold that the district court abused its discretion by admitting the methamphetamine. The sole ground advanced in the State's motion to revoke community supervision was based on Wiede's possession of methamphetamine. Therefore, the admission of the methamphetamine into evidence was the only basis for the district court's decision to revoke Wiede's probation. The error in its admission was thus harmful.

Because the remaining issue concerning inadequate proof of the chain of custody of the methamphetamine would not require any greater relief, we need not address it.

**Conclusion**

The district court erred by admitting the methamphetamine into evidence. Accordingly, we reverse the district court's judgment revoking Wiede's probation and re-

mand the cause for further proceedings not inconsistent with this opinion.

JAN P. PATTERSON, Justice, dissenting.

Because the trial judge is the sole judge of the credibility of the witnesses and we are to uphold the trial court's ruling on any theory of law applicable to the case, and because this probation revocation hearing involves an application of law to facts, the outcome of which turns on the credibility and demeanor of the witnesses, I would affirm the trial court's revocation order. *See State v. Ross,* 32 S.W.3d 853 (2000). We accord the trial court its necessary and proper role because it is the trial court that observes firsthand the demeanor and appearance of witnesses. But brushing aside the standard of review here, the majority reviewed a cold record, resurrected soundbites of testimony to support its own fact-finding, and engaged in a *post hoc* evaluation of governmental conduct that the trial court had found was reasonable in its context. Because the majority failed to adhere to the appropriate standard of review, I dissent.[1]

At a hearing on the State's motion to revoke probation, the record reveals the following facts. Ray Tambunga, a high school teacher with the Austin Independent School District, was taking his son to school at approximately 7:00 a.m. on April 17, 2002. He stopped at the T-intersection of Siebert Drive and F.M. 150 in Hays County behind an 18–wheeler truck loaded with sod. He waited while the truck turned left onto F.M. 150. As Tambunga turned right on F.M. 150, he saw appellant's white sports car pass by a "little bit faster than the speed limit." Tambunga

watched as appellant collided with the truck that continued on down the roadway.

Tambunga pulled off the highway and stopped to check on appellant's condition. Tambunga went over to the driver's side window of appellant's car and asked appellant if he was all right. There, Tambunga observed that appellant was dazed and bleeding. Within a few minutes, a department of public safety trooper stopped to help.

DPS Trooper Christopher McGuairt testified that he came upon the accident shortly after it occurred as he was traveling from Austin to San Marcos with another trooper to conduct a DPS training exercise for new officers. McGuairt testified that he saw a vehicle in the road, facing the opposite direction, with severe damage to the front portion of the car. The officers called in the accident, located the 18–wheeler that was also involved in the accident, and began directing traffic. Appellant was badly injured with cuts and abrasions, and was bleeding on his face.

As other law enforcement personnel arrived on the scene, Tambunga remained near appellant's car. At one point, appellant's movements led Tambunga to believe he was going to light a cigarette. Leaning forward to dissuade appellant from smoking, Tambunga saw appellant make some movements, reaching across his body with his left hand "as if he was getting something out of his pocket." Tambunga told the officers that he saw appellant "reach across his body and hide something between the seat, the driver's seat and the console." Tambunga testified that the item covered by appellant's hand appeared to be "clear plastic similar to a sandwich bag." The officer retrieved an item from

---

1. *See also Wiede v. State,* 157 S.W.3d 87, 2005 Tex.App. LEXIS 452 (Tex.App.-Austin 2005, no pet. h.).

the area near the console. Tambunga testified:

> [A]t first, he [the officer] produced a little—a small square about two by two plastic wrapper that had been torn—ripped open and I saw and said, no. It was—I told him, I said it appeared larger than that. It looked like it was bigger than that. So he went back and he produced a sandwich size bag, you know, with something in the bottom, some kind of off-white, whitish in the bag.

It "looked like powder."

McGuairt also testified that Tambunga advised the officers that appellant had "removed something from his pocket and reached back and placed it around the console area." McGuairt testified that the circumstances of the accident and Tambunga's tip caused him to be suspicious that appellant had hidden "some type of contraband." He observed another officer "reach into the center console area and remove[ ] a substance" that was "off-white colored" and inside a clear plastic bag. McGuairt took possession of the bag.

Appellant had been removed from the car and placed in the ambulance. McGuairt testified that he knocked on the back door of the emergency vehicle to advise the EMS personnel of the existence of the bag of white powdery substance. When DPS Trooper Freeman, the investigating officer, arrived on the scene, McGuairt turned the substance over to him. Because appellant's car was disabled and blocking traffic, it was towed from the scene by a private wrecking service. Appellant was charged with having no liability insurance and with failure to control speed. At the hearing on the State's motion, Freeman testified that the accident was caused by appellant "traveling at an unsafe speed."

In reviewing a ruling on a challenge to the admission of evidence, we give almost total deference to the trial court's determination of historical facts and review the court's application of law de novo. *Ford v. State,* 158 S.W.3d 488, 492, 2005 Tex.Crim. App. LEXIS 399, at *8 (Tex.Crim.App. 2005); *Balentine v. State,* 71 S.W.3d 763, 768 (Tex.Crim.App.2002). When the trial court does not make explicit findings of historical facts, we review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported in the record. *Id.* We must affirm the trial court's ruling if it can be upheld on any valid theory of law applicable to the case—even if the trial court did not base its decision on the applicable theory. *State v. Steelman,* 93 S.W.3d 102, 107 (Tex.Crim. App.2002).

When a defendant appeals from a probation revocation hearing, the question presented is whether the trial court abused its discretion in revoking the defendant's probation. *Bradley v. State,* 564 S.W.2d 727, 729 (Tex.Crim.App.1978). In determining whether an abuse of discretion occurred, we review the evidence adduced at the revocation hearing in the light most favorable to the trial court's order. *Jones v. State,* 589 S.W.2d 419, 421 (Tex.Crim.App. 1979). At a probation revocation hearing, the trial court is the sole trier of fact and determines the credibility of the witnesses. *Ex parte Tarver,* 725 S.W.2d 195, 198 (Tex. Crim.App.1986). The trial court must find that the State satisfied its burden of showing that "the greater weight of the credible evidence ... creates a reasonable belief that a condition of probation" was violated, and has "proved every element of the offense by a preponderance of the evidence." *Kulhanek v. State,* 587 S.W.2d 424, 426 (Tex.Crim.App.1979).

Once the defendant establishes that a police search was not supported by a warrant, the burden shifts to the State to

prove the reasonableness of the search and seizure and the admissibility of the evidence. *See Russell v. State,* 717 S.W.2d 7, 9–10 (Tex.Crim.App.1986). It is undisputed in this case that appellant was not arrested and that the search was warrantless. To uphold the court's determination in this case, the evidence on which the court based its determination must have been properly admitted.

The State contends that the evidence was properly admitted because the appellant had no reasonable expectation of privacy in his automobile after he was involved in an accident that left the vehicle disabled and blocking a lane of highway traffic. The State also contends that the circumstances at the accident scene provided probable cause for the officers to search appellant's car.

The Texas Transportation Code expressly provides that "[a] peace officer who is notified of a motor vehicle accident resulting in injury … may investigate the accident and file justifiable charges relating to the accident …" Tex. Transp. Code Ann. § 550.041(a) (West 1999 & Supp.2004–05). Not only are officers authorized to investigate accidents, they have a duty to do so, and conducting an investigation of the vehicles involved is a necessary part of fulfilling that duty. *Sandel v. State,* 158 Tex. Crim. 101, 253 S.W.2d 283, 285 (1952). Here, the parties agree that the search was conducted as part of an accident investigation rather than a traffic stop or inventory search. The officers were authorized to investigate the accident scene pursuant to section 550.041(a) of the Texas Transportation Code. The question remains whether they could lawfully retrieve the bag of methamphetamine located near the console.

Courts have long recognized that the physical characteristics and uses of an automobile result in a lessened expectation of privacy. *See, e.g., Wyoming v. Houghton,* 526 U.S. 295, 303, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999); *New York v. Class,* 475 U.S. 106, 112, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986); *South Dakota v. Opperman,* 428 U.S. 364, 382, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). An automobile exception to the Fourth Amendment's warrant requirement, allowing officers to search vehicles without first obtaining a warrant in certain limited situations, has long been recognized by the Supreme Court. *See Carroll v. United States,* 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not. *Opperman,* 428 U.S. at 382, 96 S.Ct. 3092; *Cardwell v. Lewis,* 417 U.S. 583, 589–90, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *Chambers v. Maroney,* 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). This exception is derived from both the "ready mobility" of vehicles and the reduced expectation of privacy attached to vehicles. *California v. Carney,* 471 U.S. 386, 391–92, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). Courts have recognized that the inherent mobility of automobiles creates circumstances of exigency that make enforcement of the warrant requirement impossible. *Opperman,* 428 U.S. at 367, 96 S.Ct. 3092; *Carroll,* 267 U.S. at 153–54, 45 S.Ct. 280.

This reduced expectation of privacy as to automobiles is further diminished by the public nature of automobile travel. In *Cardwell v. Lewis,* the Supreme Court observed that:

> One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its

occupants and its content are in plain view.

417 U.S. at 590, 94 S.Ct. 2464. The Court has recognized that, "as an everyday occurrence," vehicles are subjected to police stops and examinations to enforce pervasive governmental regulations, *Opperman*, 428 U.S. at 368, 96 S.Ct. 3092, and are "exposed to traffic accidents that may render all of their contents open to public scrutiny." *Houghton*, 526 U.S. at 303, 119 S.Ct. 1297. Recognizing still that drivers do not relinquish the protections afforded by the Fourth Amendment and the right of individuals to be free of unreasonable governmental intrusion, in *Cardwell* the Supreme Court observed that "insofar as the Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone" of the inquiry. 417 U.S. at 591, 94 S.Ct. 2464. It is this touchstone of privacy that prohibits "unreasonable" searches and seizures.

The Supreme Court recognized that a warrantless search could still be constitutionally reasonable under the community caretaking exception to the Fourth Amendment in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The Court reasoned:

> Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Id.* at 441, 93 S.Ct. 2523. This case falls within the community caretaking exception to the Fourth Amendment's warrant requirement as formulated by the Supreme Court in *Cady* and the Texas Court of Criminal Appeals in *Wright v. State*, 7 S.W.3d 148, 153 (Tex.Crim.App.1999). In *Wright*, the court of criminal appeals addressed the issue of whether a deputy acted reasonably in stopping a vehicle out of concern for the defendant's welfare, after the officer observed the defendant, a passenger, retch out of an open rear window. *Id.* at 150. In its opinion, the court made clear that the proper inquiry is whether the police officer acted reasonably under the totality of circumstances to render services in performing his duty to "serve and protect." *Id.* at 151. As to whether the officer acted reasonably, the court set forth four nonexclusive factors: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to himself or others. *Id.* at 152.

In this case, the record demonstrates that appellant was seriously injured, located at the scene of an automobile collision, and in need of medical attention; he was removed from the car due to his injuries and transported to the hospital. At the time the officers executed the search pursuant to the tip, appellant had been removed from the car and the car was in the custody of the officers. Based on Tambunga's tip, the officer could infer—and the record supports—that the information was relevant to the existing circumstances, either the accident investigation or appellant's medical treatment. Indeed, Trooper McGuairt testified that he advised the emergency personnel of the existence of the drugs. Given these facts alone, the officers' actions were justified under the *Wright* four-factor test.

The record also establishes that the privacy interest at stake here was minimal. The automobile was demolished and inoperable; it was in the roadway, blocking a

lane of the highway and was soon to be towed from the accident scene. The testimony at the hearing established that appellant made no requests or statements regarding the disposition of his vehicle. Appellant had no reason to believe that his car would not be removed from the roadway. Law enforcement, fire, and emergency personnel were on the scene handling the emergency; the DPS troopers were investigating the cause of the accident as charged by law. *See* Tex. Transp. Code Ann. § 550.041. This *a fortiori* included following up on the information provided by Tambunga. The investigation at the scene performed an important and routine administrative purpose.

Even if the investigation of the accident scene was not justified by the community caretaking exception, the State also contends that the search was supported by probable cause. We review the totality of the circumstances to determine whether the search is supported by probable cause. *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The circumstances are viewed in light of the officer's knowledge and training on how to conduct searches and accident investigations. *United State v. McSween*, 53 F.3d 684, 686 (5th Cir.1995). "[A] 'trained officer draws inferences and makes deductions ... that might well elude an untrained person,' and evidence collected 'must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' " *United States v. Reed*, 882 F.2d 147, 149 (5th Cir.1989) (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). If the circumstances are such that a person of reasonable caution would have probable cause to believe that either contraband or evidence of a crime is likely to be found in the vehicle, then the officers are justified in searching the area suspected of contain-

ing such evidence or contraband. *United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Powell v. State*, 898 S.W.2d 821, 827 (Tex.Crim.App. 1994); *McNairy v. State*, 835 S.W.2d 101, 107 (Tex.Crim.App.1991) (exigent circumstances justifying a warrantless entry include (i) rendering aid or assistance to persons whom the officers reasonably believe are in need of assistance or (ii) preventing the destruction of evidence or contraband).

Sufficient probable cause can result from a disinterested informant's tip. *See Gates*, 462 U.S. at 230–31, 103 S.Ct. 2317. Information from a citizen who advises an officer in person that an individual present on the scene is committing a crime should be given serious attention and great weight by the officer. *United States v. Sierra–Hernandez*, 581 F.2d 760, 763 & n. 1 (9th Cir.1978). Such information given by a citizen, who is not connected with the police or who is not a paid informant, is inherently trustworthy. *Id.* Several factors can enhance the reliability of an informant's tip. An "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles the informant's tip to greater weight than might otherwise be the case." *State v. Adkins*, 829 S.W.2d 900, 901 (Tex.App.-Fort Worth 1992, pet. ref'd) (citing *Gates*, 462 U.S. at 234, 103 S.Ct. 2317). The tip is also more reliable when the informant "came forward personally to give information that was immediately verifiable at the scene." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). A face-to-face informant who is located in close proximity to his own vehicle is more credible because his car provides a method by which his identity may easily be traced, thereby holding him accountable for his interven-

tion. *Sierra–Hernandez,* 581 F.2d at 763 & n. 1.

As the sole judge of the credibility of the witnesses and the weight to be given their testimony at the hearing, the trial court reasoned:

> The officer was there. The officer had a right to be there, and if he comes up with probable cause to believe that a crime occurred, he can investigate and he can search if he has probable cause.
>
> * * *
>
> I'm inclined to believe that that's probably probable cause to investigate further in this day and age and when an officer says that—has a witness tell him that he has now—has knowledge that somebody secreted a plastic bag, when there are police officers standing all the way around the vehicle, I think that's probable cause to search right now. . . .
>
> * * *
>
> But that's where I'm leaning to believe that that officer has probable cause and possibly a duty to investigate a possible crime in progress when it appears that somebody just secreted—And you add to that the fact that the guy might have been under the influence of drugs because an accident had just occurred and the fact that there are police officers all the way around, the totality of the circumstances—if I'm a cop, and I used to be one, I'm going to search there and see what's there.
>
> * * *
>
> You got probable cause to believe that contraband is there and there's a crime afoot and they're about to tow the car away and you're not going to get a chance to check again, I think the officers would have been negligent not to check it.

An abundance of evidence in the record supports the trial court's finding that Ray Tambunga was a credible and reliable witness, and that probable cause existed. Tambunga was not an anonymous informant. Rather, he had a face-to-face conversation with the officer, gave a sworn statement of his report and remained on the scene, provided his name and contact information to the officers, and subsequently appeared at the hearing to testify. Tambunga was in close proximity to his own vehicle at the time of his report. These facts enhance Tambunga's reliability because they make him accountable for his statements. It is undisputed that Tambunga was a disinterested witness; he was not paid for the information, nor did he have any dealings with the police that would give him a motive to lie. That the trial court found Tambunga credible is clear from the record. After Tambunga testified, the court observed: "We actually had a good Samaritan. I think that's the first time I've ever heard testimony from a good Samaritan in the nine years that I've been on this bench. You hardly ever see that."

Based on Tambunga's detailed eyewitness account, a reasonable officer, given his training and experience, could infer that appellant's actions, in the context of the automobile collision, were consistent with the illegal use of alcohol or narcotics. Tambunga's report provided specific and articulable facts warranting the officer's belief that evidence of a crime or contraband was hidden in the console of appellant's car and gave rise to probable cause which justified the officer's warrantless search of the specified area.

As the trier of fact at the hearing, the trial court is free to believe or disbelieve all or any part of any witness's testimony. The trial court's decision here to admit the

methamphetamine into evidence was based on its evaluation of the credibility of the witnesses and the weight to be accorded their testimony. Reviewing the evidence in the light most favorable to the trial court's ruling, I conclude that the record supports the court's determination.

In sum, I would hold that the district court properly admitted the evidence and did not abuse its discretion in granting the State's motion to revoke appellant's probation.