**David Edwin WIEDE, Appellant,**

v.

**The STATE of Texas.**

**No. PD–748–05.**

Court of Criminal Appeals of Texas.

Jan. 31, 2007.

John Fahle, San Antonio, for Appellant.

Wesley H. Hau, Asst. Crim. D.A., San Marcos, Matthew Paul, State's Attorney, Austin, for the State.

### OPINION

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, WOMACK, HERVEY, and COCHRAN, JJ., joined.

With officers standing nearby, David Edwin Wiede was observed hiding a plastic bag in his car shortly after he was in an accident. A search yielded methamphetamine, which Wiede moved to suppress. The trial judge denied the motion, but the court of appeals reversed.[1] We hold that the court failed to give appropriate deference to the trial judge's fact-findings and that it erred in finding that the search was unsupported by probable cause.

### Facts and Trial Court Proceedings

In 1997, a jury found Wiede guilty of the second degree felony offense of possession of methamphetamine. The trial judge sentenced Wiede to ten years' imprisonment and assessed a $2,000 fine. The trial judge then decided to probate Wiede's ten-year sentence of imprisonment, placing Wiede on community supervision for a period of ten years.

The State filed a motion to revoke Wiede's community supervision and to impose sentence in October 2002. In the motion, the State alleged that Wiede, during the period of his community supervision, "on or about the 17TH day of April, A.D. 2002, in Hays County, Texas did then and there commit the offense of Possession of a Controlled Substance[.]"

Wiede entered a plea of not true and filed a motion to suppress the evidence seized from his vehicle on April 17, 2002, contending that the controlled substance, methamphetamine, was obtained as a result of an illegal search.

Early in the morning on April 17, 2002, while driving on FM 150 in Hays County, Wiede crashed into the back of an eighteen-wheeler truck. Roy Tambunga, who was behind the eighteen-wheeler on Siebert Drive when it pulled onto FM 150, witnessed the accident. At the suppression hearing, Tambunga testified that as the eighteen-wheeler was making a left onto FM 150, Wiede, who was traveling on FM 150 in a white car, "didn't have a chance to stop, skidded about a hundred feet or so, smacked right into the back of the truck and the truck kept going." When asked by the trial judge if he believed the truck driver was at fault, Tambunga stated: "I think that you should know that when you're driving a big truck like that, you can't move very fast, I think he pulled out and didn't give enough room for traffic, but I also think that the white car was traveling a little bit faster than the speed limit." Wiede's car, which sustained severe frontal damage, was disabled in the

---

1. *Wiede v. State*, 163 S.W.3d 239, 241 (Tex. App.-Austin 2005).

middle of the road. Tambunga pulled off the road and got out of his car to see if Wiede was okay. When Tambunga asked Wiede if he was all right, Tambunga observed that Wiede looked "dazed," was bleeding from his right arm, and was moaning.

Shortly after the accident, a group of Department of Public Safety (DPS) officers, who were on their way to the San Marcos Airport to conduct driver training for new recruits, drove up on the scene of the accident. The officers stopped, and Trooper Christopher McGuairt approached Wiede's car to render assistance. He observed that Wiede was bleeding around his facial area and was advised by Tambunga that Wiede had collided into the back of a truck. Trooper McGuairt recalled seeing the truck traveling in the opposite direction just before he arrived at the accident scene. He then pursued the truck, eventually catching up with it and stopping it. Trooper McGuairt noted some minor damage to the rear of the truck, which appeared consistent with the accident, and ordered the driver to return to the scene of the accident. The truck's driver was unaware of the accident, and according to Trooper McGuairt, the driver's lack of awareness did not seem remarkable given the load that the truck was carrying and the size of Wiede's car.

When Trooper McGuairt arrived back at the scene of the accident, other officers were directing traffic and waiting for emergency medical services (EMS) to arrive. During this time, Tambunga was standing by the left rear fender of Wiede's car and watching Wiede "in case he stopped breathing or something[.]" He noticed Wiede reaching his left hand across his body "as if he was getting something out of his pocket" and then "hide something between the seat, the driver's seat and the console." Tambunga testified:

I thought he was going to try to light a cigarette and I approached him. I approached over his shoulder to make sure that he didn't light a match because I thought, you know, the car would—there was quite a bit of fluid on the street. I didn't know if it was gasoline or anything else.

When asked if he could see what Wiede had in his hand, Tambunga stated that "it was covered by his hand for the most part and it was—appeared to be made out of plastic, clear plastic similar to a sandwich bag." After Wiede was removed from the car, Tambunga told a local law enforcement officer what he had observed. Tambunga testified: "I told him, I saw him stick something between ... the console and the seat and I may have said that it looked like plastic." Additionally, Trooper McGuairt was provided with similar information from Tambunga. Trooper McGuairt testified that Tambunga advised him

that he had observed the driver of the vehicle. With one hand he was covering up his face, basically moaning in pain. He was obviously in pain, and with his other hand he had reached over, removed something from his pocket and reached back and placed it around the console area.

The information provided by Tambunga was discussed among the officers surrounding Wiede's car. According to Tambunga and Trooper McGuairt, the local officer went to the car and searched it. Tambunga testified that the officer

went in and searched and at first, he produced a little—a small square about two by two plastic wrapper that had been torn—ripped open and I saw said, no. It was—I told him, I said it appeared larger than that. It looked like it was bigger than that. So he went

back and produced a sandwich size bag, you know, with something in the bottom, some kind of off-white, whitish in the bag.

Trooper McGuairt took possession of the plastic bag so he could give it to the investigating DPS officer, Trooper Brian Freeman, upon his arrival. When Trooper McGuairt took possession of the bag, he took it over to EMS personnel and showed it to a paramedic. Trooper Freeman later took possession of the bag and then submitted it to the DPS lab for testing. A DPS chemist testified that the bag seized from Wiede's car contained 1.76 grams of methamphetamine. Wiede was subsequently charged with failing to have liability insurance and failing to control his speed.

After the presentation of evidence on the suppression motion, the trial judge stated that he would permit the parties to file informal briefs before issuing his ruling. The trial judge, however, indicated which way he was leaning.

> You've got a witness, a bystander, describing a furtive gesture, possibly, and describing as he tried to hide something between the seat and the glovebox [sic] and it was a clear plastic bag. Now that's probably probable cause to believe it might be drugs, in this day and age, with officers seeing dope in plastic bags all the time.
>
> . . .
>
> I'm inclined to believe that that's probably probable cause to investigate further in this day and age and when an officer says that—has a witness tell him that he has now—has knowledge that somebody secreted a plastic bag, when there are police officers standing all the way

around the vehicle, I think that's probable cause to search right now, but if you can show me some briefing to dissuade me, I will give you a chance . . . .

Approximately two weeks later, after receiving briefs, the trial judge heard additional arguments from the parties. Among other things, Wiede challenged whether Tambunga had in fact informed officers that Wiede had placed a plastic bag, as opposed to some unidentified object, between the console and seat after removing it from his pocket. In response to this argument, the trial judge concluded that Tambunga had conveyed the information about the plastic bag to the officers. The judge stated: "When [Tambunga] said to the officer, after he pulled out one, 'No, not that one, a bigger one,' it became obvious to me that he did."

The trial judge denied Wiede's motion to suppress. After finding the allegation in the motion to revoke to be true, the trial judge granted the State's motion to revoke Wiede's community supervision and sentenced Wiede to ten years' imprisonment. Wiede filed a notice of appeal, and the trial judge certified his right to appeal.

### The Court of Appeals

Before the Third Court of Appeals, Wiede challenged the trial judge's decision to deny his motion to suppress.[2] Wiede claimed, among other things, that "the drugs were the fruit of an unlawful search of his car."[3] In response, the State argued that Wiede had no reasonable expectation of privacy in his wrecked vehicle and that law enforcement officials had "probable cause to believe the car contained contraband."[4] The court, with one justice

2. *Id.*

3. *Id.*

4. *Id.*

dissenting,[5] agreed with Wiede, holding that the trial judge "erred by admitting the methamphetamine into evidence."[6] Accordingly, the court reversed the lower court's judgment revoking Wiede's community supervision and remanded the case "for further proceedings not inconsistent with . . . [its] opinion."[7]

In reaching its decision, the court first addressed the State's contention that Wiede had no reasonable expectation of privacy in his vehicle—specifically, the State's argument that an "owner of a vehicle involved in a collision has reason to believe the car will be removed from the roadway and [that] a search of its contents [will be] conducted" because Section 550.041(a) of the Transportation Code gives officers the authority to investigate motor vehicle accidents.[8] Section 550.041(a), Transportation Code, reads as follows:

> A peace officer who is notified of a motor vehicle accident resulting in injury to or death of a person or property damage to an apparent extent of at least $1,000 may investigate the accident and file justifiable charges relating to the accident without regard to whether the accident occurred on property to which this chapter applies.[9]

Reviewing this provision, the court stated: "We find no authority construing this statute—certainly none that would permit a peace officer to search a vehicle outside of the well delineated constraints of the *Fourth Amendment*."[10] After looking at the history of the statute, the court determined that it "was intended merely to clarify a peace officer's authority to investigate some traffic accidents which occur on private property rather than on the public roadways."[11] Rejecting the State's argument that Wiede had no reasonable expectation of privacy in his car, the court held that

> a statutory provision [cannot] erase Fourth Amendment protections. Although we acknowledge that an individual possesses a reduced expectation of privacy in a motor vehicle, this diminished privacy interest has been recognized in well established search and seizure law. We will not further construe this reduced expectation of privacy to dispense with the Fourth Amendment's probable cause requirement altogether when a vehicle is involved in a traffic accident.[12]

Turning to the State's argument that the search was supported by probable cause, the court considered the State's reliance on the trial judge's statement about " 'officers seeing dope in plastic bags all the time' " to support its position that "Tambunga's observations represented probable cause for police to believe Wiede possessed drugs."[13] The court noted that this Court has "held that there is nothing inherently suspicious about a plastic bag"[14] and that

---

5. *Id.* at 247–53 (Patterson, J., dissenting).

6. *Id.* at 246.

7. *Id.* at 247.

8. *Id.* at 243.

9. TEX. TRANSP. CODE § 550.041.

10. *Wiede,* 163 S.W.3d at 243–44 (original emphasis).

11. *Id.* at 244 (citing Act of August 28, 1967, 60th Leg., R.S., ch. 526, 1967 Tex. Gen. Laws 1175, § 43(A) (recodified and amended 1995) (current version at TEX. TRANSP. CODE ANN. § 550.041)).

12. *Id.*

13. *Id.*

14. *Id.* (citing *Gonzales v. State,* 648 S.W.2d 684, 686 (Tex.Crim.App.1983); *Sullivan v. State,* 626 S.W.2d 58, 60 (Tex.Crim.App. 1981); *Duncan v. State,* 549 S.W.2d 730, 732 (Tex.Crim.App.1977)).

[f]or a plastic bag to gain the significance attributed to it by the trial judge, there must be evidence that the seizing officer knew at the time of the search that drugs were commonly packaged in plastic bags and suspicious circumstances that would lead an officer to believe the bag contained drugs.[15]

Evaluating the facts before it, the court observed that the State was unable to identify the officer who had conducted the search and that the record did not establish that any officer had "knowledge that plastics bags are ordinarily used to contain drugs." [16] The court further noted that there were "no suspicious circumstances in the record that would lead an officer to believe that Wiede was in possession of drugs." [17] Tambunga's statements about the cause of the accident, according to the court, "dispelled any notion that Wiede's collision with the truck was evidence of intoxication." [18] The court held that "even when viewed most favorably to the district court's decision, the totality of the circumstances presented at the hearing did not demonstrate that the unidentified police officer had probable cause to believe that Wiede's vehicle contained evidence of a crime." [19]

Disagreeing with the majority, the dissenting justice concluded that the search was justified under "the community caretaking exception to the Fourth Amendment's warrant requirement" [20] and, in the alternative, was supported by probable cause.[21] In the opinion of the dissent-

ing justice, the search was supported by probable cause because "[b]ased on Tambunga's detailed eyewitness account, a reasonable officer, given his training and experience, could infer that [Wiede]'s actions, in the context of the automobile collision, were consistent with the illegal use of alcohol or narcotics." [22]

### The State's Petition for Discretionary Review

The State petitioned for discretionary review, and we granted its first two grounds for review. These grounds present the following questions for this Court to consider:

1. Did the Court of Appeals err in holding that Appellant had a reasonable expectation of privacy in the contents of a vehicle which had been involved in an accident on a public highway when Appellant was taken from the scene by ambulance and the vehicle was going to be towed away?

2. Did the Court of Appeals err in holding that police had no probable cause to search Appellant's car after Appellant was observed secreting a plastic bag in his car following a traffic accident?

Because we conclude that the court of appeals erred in finding that the search of Wiede's car was not supported by probable cause, we will assume, without deciding, that Wiede had a reasonable expectation of privacy in the contents of his car following

---

15. *Id.* at 245 (citing *Sullivan*, 626 S.W.2d at 60; *Guzman v. State*, 955 S.W.2d 85, 90 (Tex. Crim.App.1997)).

16. *Id.*

17. *Id.*

18. *Id.*

19. *Id.*

20. *Id.* at 250 (Patterson, J., dissenting) (citing *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Wright v. State*, 7 S.W.3d 148, 153 (Tex.Crim.App.1999)).

21. *Id.* at 252–53 (Patterson, J., dissenting).

22. *Id.* at 252 (Patterson, J., dissenting).

the accident. Therefore, the State's first ground for review is dismissed.

## Law and Analysis

 The Fourth Amendment forbids unreasonable searches and seizures by government officials.[23] Generally, a search conducted without a warrant is considered *per se* unreasonable.[24] But there is an exception for vehicles—a warrantless search of a vehicle is reasonable if law enforcement officials have probable cause to believe that the vehicle contains contraband.[25] In addition to "the element of mobility, less rigorous warrant requirements govern [vehicles] because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office."[26]

 Probable cause requires an evaluation of probabilities, and probabilities "are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."[27] The United States Supreme Court has described probable cause as a "fluid concept[ ]"; its "substantive content" is derived from "the particular context[ ] in which" it is assessed.[28] Probable cause "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found[.]"[29] Known facts and circumstances include those personally known to law enforcement officers or those derived from a "reasonably trustworthy" source.[30]

 An appellate court reviewing a trial judge's ruling on a motion to suppress "must view the evidence in the light most favorable to the trial court's ruling."[31] Trial judges, unlike their appellate court counterparts, are uniquely situated to "observe[ ] first hand the demeanor and appearance of a witness[.]"[32] Consequently, a trial judge "is the sole trier of fact and judge of the credibility of the witnesses

23. *O'Hara v. State*, 27 S.W.3d 548, 550 (Tex. Crim.App.2000) (citing U.S. Const. Amend. IV; *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998)).

24. *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (citing *California v. Carney*, 471 U.S. 386, 390–91, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985)).

25. *Id.* at 466–67, 119 S.Ct. 2013; *Dixon v. State*, 206 S.W.3d 613, 619 n. 25 (Tex.Crim. App.2006).

26. *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *see also Robertson v. State*, 541 S.W.2d 608, 610 (Tex.Crim.App.1976).

27. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

28. *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (citing *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Brinegar*, 338 U.S. at 175, 69 S.Ct. 1302; *Ker v. California*, 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

29. *Id.* at 696, 116 S.Ct. 1657 (citing *Brinegar*, 338 U.S. at 175–76, 69 S.Ct. 1302); *Dixon*, 206 S.W.3d at 616 ("Probable cause to search exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location.") (citing *Gates*, 462 U.S. at 238, 103 S.Ct. 2317); *see also Torres v. State*, 182 S.W.3d 899, 902 (Tex.Crim.App. 2005) ("probable cause must be based on facts, not opinions.").

30. *Torres*, 182 S.W.3d at 901–03.

31. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim.App.2006).

32. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim.App.2000) (citing *Garcia v. State*, 15 S.W.3d 533, 535 (Tex.Crim.App.2000); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim. App.1996); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990)).

and the weight to be given their testimony" when entertaining a motion to suppress.[33] When reviewing a trial judge's decision to deny a motion to suppress where probable cause to search was challenged, an appellate court must afford "almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the court's application of the law of search and seizure to those facts."[34] And where a trial judge does not enter findings of fact, like this case, a reviewing court must "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record."[35] When determining probable cause, an appellate court considers the totality of the circumstances.[36] This means that a "divide-and-conquer" or piecemeal approach is prohibited.[37] The subjective intent or motivations of law enforcement officials is not taken into account when considering the totality of the circumstances.[38] But the training, knowledge, and experience of law enforcement officials is taken into consideration.[39]

■ In its brief, the State argues that the appeals court erred in its probable cause analysis because it failed to review the totality of the circumstances; instead, the State maintains, the court broke down the circumstances into parts and then disposed of "each part as insufficient by itself to establish probable cause."[40] The State further contends that the trial judge "synthesized the facts, rather than examining them piecemeal" and presents the following argument:

> An accident alone may not be sufficient. A plastic baggie alone may not be suspicious. A furtive gesture by itself may not be probable cause. But a person in an accident who is confronted by police surrounding his car who then determines to remove a baggie from his pocket which he conceals in a furtive gesture is another story altogether.[41]

We agree with the State—the lower court failed to review the totality of the circumstances in this case and erred in concluding that the search of Wiede's car was not supported by probable cause. Moreover, based on our review of the record, we find that the court did not afford almost total deference, as required, to the trial judge's implicit fact-findings that demonstrate the presence of probable cause.

■ We begin our analysis with the accident. The court of appeals found that Tambunga's testimony about the cause of

---

**33.** *Id.* (quoting *State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App.1999)).

**34.** *Id.* (citing *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Guzman,* 955 S.W.2d at 88 n. 3, 90–91); *Dixon,* 206 S.W.3d at 616.

**35.** *Ross,* 32 S.W.3d at 855 (citing *Carmouche,* 10 S.W.3d at 328).

**36.** *Dixon,* 206 S.W.3d at 616 (citing *Gates,* 462 U.S. at 238, 103 S.Ct. 2317); *Torres,* 182 S.W.3d at 902 (quoting *Amores v. State,* 816 S.W.2d 407, 413 (Tex.Crim.App.1991)).

**37.** *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

**38.** *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

**39.** *Arvizu,* 534 U.S. at 273, 122 S.Ct. 744; *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *United States v. McSween,* 53 F.3d 684, 686 (5th Cir.1995); *United States v. Clark,* 559 F.2d 420, 424 (5th Cir.1977).

**40.** Br. of State, at 14.

**41.** Br. of State, at 15.

the accident "dispelled any notion that Wiede's collision with the truck was evidence of intoxication." [42] Based on this, the court found that the testimony weakened the State's probable cause argument. [43] However, the court's reliance on Tambunga's testimony about the cause of the accident at the suppression hearing is misplaced. When determining probable cause, the focus is on the facts and circumstances known to law enforcement officials at the time of the search. [44] The record shows that Tambunga, whom the trial judge identified as a "good Samaritan," did not offer a detailed account of the events leading up to the accident and did not convey his opinion about the cause of the accident to law enforcement officials at the scene of the accident. Trooper McGuairt testified that Tambunga advised him "that a truck tractor semi-trailer had been the vehicle that he [ (Wiede) ] had run into the back of" and "that he observed Mr. Wiede strike the rear of the tractor and stated that the truck tractor kept going." When asked whether Tambunga gave him "any idea with regard to Mr. Wiede's speed or anything like that as far as any of the other details of what might have contributed to that," Trooper McGuairt stated: "To my recollection, no." Further, Tambunga testified only that he "told them there had been a wreck."

Given the facts and circumstances about the accident that were known to the officers at the time of the search, the court of appeals erred in concluding that the State's probable cause argument was weakened by Tambunga's testimony concerning the cause of the accident. [45] The court of appeals should not have eliminated the accident as a relevant fact and circumstance in its probable cause analysis when reviewing the trial judge's decision to deny Wiede's motion to suppress. In affording no weight to the accident when considering the presence of probable cause, the court of appeals failed to give appropriate deference to the trial judge's implicit findings of historical fact that are supported by the record.

 Next, we consider Wiede's placement of the plastic bag between the seat and console. The court of appeals correctly observed that this Court has held that there is nothing about a clear plastic bag that makes it inherently suspicious. [46] The court of appeals also recognized, correctly, that

[f]or a plastic bag to gain the significance attributed to it by the trial judge, there must be evidence that the seizing officer knew at the time of the search that drugs were commonly packaged in plastic bags and suspicious circumstances that would lead an officer believe that the bag contained drugs. [47]

Applying the law, the court noted that the officer who conducted the search did not testify and then concluded that the record did not establish that any of the officers

---

**42.** *Wiede,* 163 S.W.3d at 245.

**43.** *Id.*

**44.** *Ornelas,* 517 U.S. at 696, 116 S.Ct. 1657 (citing *Brinegar,* 338 U.S. at 175–76, 69 S.Ct. 1302); *see also Amores v. State,* 816 S.W.2d 407, 415 (Tex.Crim.App.1991) (" '[i]n reviewing a warrantless arrest to determine the existence of probable cause, we look to the facts known to the officers at the time of the arrest; subsequently discovered facts or later-ac-

quired knowledge, like the fruits of a search, cannot retrospectively serve to bolster probable cause at the time of the arrest.' ").

**45.** *Wiede,* 163 S.W.3d at 245.

**46.** *Id.* at 244 (citing *Gonzales,* 648 S.W.2d at 686; *Sullivan,* 626 S.W.2d at 60; *Duncan,* 549 S.W.2d at 732).

**47.** *Id.* at 245 (citing *Sullivan,* 626 S.W.2d at 60; *Guzman,* 955 S.W.2d at 90).

had knowledge that "plastic bags are ordinarily used to contain drugs." [48] Based on our own review of the record, we find, once again, that the court of appeals failed to give almost total deference to the trial court's implicit fact determinations that the record supports.

Trooper McGuairt, who had been employed by DPS for seven years at the time of the suppression hearing, testified that he was trained to recognize different types of controlled substances and the legal standards for conducting different types of searches. He further testified that based on Tambunga's description of what Wiede removed from his pocket and placed in the console area, "that it may have been some type of contraband" or "controlled substance." Although probable cause is viewed objectively, Trooper McGuairt's testimony about his training and his opinion concerning the contents of the plastic bag provided a basis from which the trial judge could have reasonably inferred that Trooper McGuairt possessed specific knowledge that drugs are commonly packaged, carried, or transported in plastic bags. [49]

As the court of appeals correctly noted, the officer who searched Wiede's car was never identified and did not testify at the suppression hearing. Despite the absence of any testimony from this officer, however, the record contains evidence from which the trial judge could have reasonably inferred that the searching officer knew, at the time of the search, that drugs are commonly carried in plastic bags.

Tambunga informed the searching officer that he had seen Wiede remove a clear plastic sandwich bag from his pocket and "hide" it between the driver's seat and console. Tambunga had also informed Trooper McGuairt that Wiede "had reached over, removed something from his pocket and reached back and placed it around the console area." Trooper McGuairt testified that the officers surrounding Wiede's car, including the searching officer, had discussed the information provided to them by Tambunga before the officer conducted the search. During cross-examination by defense counsel about the purpose of the search, Trooper McGuairt testified that they were investigating an accident and whether a crime had been committed because he believed that Wiede had some type of contraband. Trooper McGuairt stated that there was no discussion about whether there would be a search. And when questioned about whether there was "any discussion about why there would be a search," he responded that there had been none but then immediately qualified his response, stating "Well, based on what had been spoken by the witness."

Here, the record shows that the officer who performed the search acted on facts directly relayed to him by Tambunga and information gained through his discussion with other officers, including Trooper McGuairt. Considering the collaborative

48. *Id.*

49. *Davis v. State,* 202 S.W.3d 149, 156–57 (Tex.Crim.App.2006) (finding it reasonable for a magistrate to infer an officer's prior experience with methamphetamine when the officer stated that he smelled an odor associated with the manufacture of methamphetamine when the officer did not offer any information about his previous experience or encounters with

such an odor); *see also Barber v. State,* 611 S.W.2d 67, 68 (Tex.Crim.App.1981) ("The standard for probable cause in a warrantless search is no less stringent than that required to be shown a magistrate for the issuance of a search warrant.") (citing *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Moulden v. State,* 576 S.W.2d 817 (Tex.Crim.App.1978)).

exchange of information between the officers, we conclude that the trial judge could have inferred, reasonably, that the searching officer was aware of the significance of the plastic bag before he conducted the search.[50]

Finally, the court of appeals disregarded the circumstances under which, and the manner with which, Wiede removed the plastic bag and placed it between his seat and console.[51] The officers knew that Wiede had collided into the truck. And while waiting for EMS, Wiede, who was debilitated and unable to get out of his car on his own accord, reached over his body with his uninjured (left) arm, removed the plastic bag from his pocket, and then secreted it when numerous law enforcement officers were standing by.

Viewing the objective facts and circumstances of this particular case in total, and giving great deference to the trial judge's fact-findings, we hold that the court of appeals erred in finding that the officer who searched Wiede's car did so without probable cause.

### Conclusion

Our review of the record reveals that the court of appeals erred by isolating and then discounting each fact and circumstance involved in this case when reviewing the trial judge's decision to deny Wiede's motion to suppress. We further conclude that the court failed to afford almost total deference to the trial judge's determinations of fact that are supported by the record. We therefore reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

JOHNSON and HOLCOMB, JJ., concurred.

---

**50.** *See Fearance v. State,* 771 S.W.2d 486, 509 (Tex.Crim.App.1988) (stating that this Court is not bound by an arresting officer's personal knowledge where the officer acted on information provided by other officers) (citing *Tarpley v. State,* 565 S.W.2d 525 (Tex.Crim. App.1978)); *Woodward v. State,* 668 S.W.2d 337, 344 (Tex.Crim.App.1984, op. on reh'g) (holding "that when there has been some cooperation between law enforcement agencies or between members of the same agency, the sum of the information known to the cooperating agencies or officers at the time of an arrest or search by any of the officers involved is to be considered in determining whether there was sufficient probable cause therefor.").

**51.** *Wiede,* 163 S.W.3d at 245.