

IN THE
TENTH COURT OF APPEALS

————————————

No. 10-10-00274-CR

CHRISTOPHER KEITH SCHMOTZER,

                                                    Appellant

 v.

THE STATE OF TEXAS,

                                                    Appellee

————————————

From the 85th District Court
Brazos County, Texas
Trial Court No. 09-01287-CRF-85

————————————————————————————————————

MEMORANDUM  OPINION

————————————————————————————————————

Christopher Schmotzer was convicted of murder and sentenced to life in prison.

TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011).  Because the trial court did not err in

denying his motion to suppress and in admitting photographs, the trial court's

judgment is affirmed.

BACKGROUND

William Johnson and William Stephens, Jr. were at Poets Bar on January 3, 2009.

Johnson was approached by a man about the name on Johnson's jersey.  The man

questioned Johnson about whether he played the online game *Worlds of Warcraft*.  The

man said he had played someone with the same name as on the back of Johnson's jersey. Johnson replied that the name was of a famous hockey player and that Johnson did not play the online game. Johnson said the conversation ended awkwardly and the man walked away. Later, when Johnson and Stephens were leaving, Johnson gave Stephens a ride to his pickup parked in the back parking lot. There, they decided to throw a football around. Johnson saw the same man who had approached him earlier standing next to a pickup parked next to a light pole watching them. The man gave Johnson a cold stare, like the man despised Johnson. Johnson eventually left Stephens in the parking lot in Stephens' pickup. Johnson saw the man still standing at his pickup. Stephens was later found dead; seat belted in his pickup but slumped out of the open driver's side door. He had been shot in the head through the door of his pickup.

**MOTION TO SUPPRESS**

In his first issue, Schmotzer argues that the trial court erred in denying his motion to suppress evidence, a gun and ammunition, seized from his pickup without a warrant. The State did not contest that the evidence was seized without a warrant.

*Applicable Law*

In a hearing on a motion to suppress evidence based on an alleged Fourth Amendment violation, the initial burden of producing evidence that rebuts the presumption of proper police conduct is on the defendant. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). This burden may be met by establishing that a search or seizure occurred without a warrant. *Id.* After this showing is made, the burden of

proof shifts to the State, at which time the State is required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id*.

Generally, a search conducted without a warrant is considered per se unreasonable. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). But there is an exception for vehicles—a warrantless search of a vehicle is reasonable if law enforcement officials have probable cause to believe the vehicle contains contraband. *Id*. In addition to the mobility element, less rigorous warrant requirements govern vehicles because the expectation of privacy with respect to one's vehicle is significantly less than that relating to one's home or office. *Id*. Probable cause exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found. *Id*. Known facts and circumstances include those personally known to law enforcement officers or those derived from a "reasonably trustworthy" source. *Id*.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the implicit fact-finding is based on an evaluation of credibility and demeanor. *Id*. However, when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's ruling on those questions de novo. *Id*. We also review the trial court's application of the law de novo. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). When reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When, as here, the trial court does not enter findings of fact, we infer the necessary factual findings that support the trial court's ruling if the evidence, viewed in the light most favorable to the ruling, support the implied fact findings. *Id*.

*Applicable Facts and Investigation*

At the hearing on the motion to suppress, Det. Arnold testified that he was called to a back parking lot at Poets Bar where Stephens was found shot in the head while in his pickup. By the time Arnold arrived, Stephens had been removed and taken to the hospital. A .40 caliber shell casing was found 20 feet from Stephens' pickup. Arnold viewed surveillance videos from the bar and the liquor store next door and saw a man wearing light pants leaving Stephens' pickup and then saw a dark-colored 4-door pickup leaving the parking lot. Stephens' friend, Will Johnson, told Arnold about a verbal incident in the bar between Johnson and a white male wearing a blue shirt, light pants, and tan shoes regarding the game, *Worlds of Warcraft.* Johnson also told Arnold about a later incident with the same person in the parking lot. The person was standing next to his pickup, watching Johnson and Stephens throw a football. The person was still there when Johnson left Stephens at his pickup. A bar waitress identified the person as Schmotzer. Arnold spoke with Schmotzer's wife who confirmed that he had

been at the bar, was wearing a dark shirt, khaki pants and light-colored loafers, played *Worlds of Warcraft*, drove a 4-door, red-colored pickup, and kept a handgun in his pickup.

Arnold and another detective met with Schmotzer at his work. Schmotzer agreed to speak with them. Arnold testified at the hearing that Schmotzer was not under arrest and was free to leave. Schmotzer confirmed that he was at Poets Bar the night of the murder; played *Worlds of Warcraft*; spoke with Johnson about *Worlds of Warcraft*; wore a blue shirt, khaki pants, and tan loafers; drove a 4-door maroon pickup; watched people playing football in the parking lot; left in the same direction as the pickup in the video; and owned a .40 caliber handgun which he kept under the back seat of his pickup. Arnold asked Schmotzer if he could see the gun, and Schmotzer agreed. When attempting to access the pickup, Arnold, due to officer safety, told Schmotzer not to open the door. Arnold opened the door of the pickup and located the handgun and .40 caliber ammunition under the back seat. The handgun and ammunition were seized but neither Schmotzer nor his pickup was seized at that time.

On appeal, Schmotzer argues that the search was unreasonable because allowing the officers to see the gun was not the same as giving consent to search the pickup and seize the gun and ammunition. In making its oral ruling, the trial court found that the officer had probable cause to search. Given the evidence developed at the hearing on the motion to suppress, we agree. The facts and circumstances known to Det. Arnold at the time he opened the door to Schmotzer's pickup were sufficient to warrant a man of reasonable prudence to believe that Schmotzer was the person who shot Stephens and

that the gun used was in Schmotzer's pickup.  Accordingly, the trial court did not err in denying Schmotzer's motion to suppress, and Schmotzer's first issue is overruled.

## PHOTOGRAPHS

In his second issue, Schmotzer complains that the trial court erred in admitting numerous "gruesome" photographs into evidence over his Rule 403 objection.  TEX. R. EVID. 403.  The specific photographs are State's Exhibits, 25-30, 44, 156 and 157. Schmotzer argues that the prejudicial nature of the photographs substantially outweighed their probative value.

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  TEX. R. EVID. 403.  A court may consider many factors in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice, including: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case.  *Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010); *Santellan v. State*, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997).  The admissibility of photographs over an objection is within the sound discretion of the trial court. *Davis*, 313 S.W.3d at 331; *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995).  Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself.  *Davis*, 313 S.W.3d at 331; *Santellan*, 939 S.W.2d at 172.

Stephens was shot in the head while he was sitting in his pickup. All the photographs complained of were 8 x 10 color photos.

*Crime Scene Photographs*

Exhibits 25-30 were photos of Stephens in his pickup as he was being removed by paramedics and placed on a gurney. Exhibit 25 depicts someone from EMS holding onto Stephens' head as he appears to be falling out of his pickup. The photo depicts blood covering Stephens' left forearm and hand and blood on the pavement below. Exhibit 26 depicts EMS personnel and Stephens' left hand and forearm covered in blood. Exhibit 27 depicts Stephens leaning out of his pickup. His right hand has some blood on it. Stephens' head is not visible in this photo. Exhibit 28 depicts EMS personnel holding Stephens upright and attaching a neck brace. Blood is shown on Stephens' face and t-shirt. Exhibit 29 is a close up photo of Stephens' head on the gurney. His face is almost entirely covered in blood. Exhibit 30 depicts the interior of Stephens' pickup after he has been removed. Blood is shown on the lower side of the driver's seat and on the side floorboard. None of these exhibits, except possibly Exhibit 29 is overly gruesome. And although Exhibit 29 is rather gruesome, the disturbing nature of this picture is primarily due to the injury caused by Schmotzer. After reviewing the photos in light of the relevant factors, we hold that the probative value of the photos was not substantially outweighed by the danger that they unfairly prejudiced Schmotzer.

*Autopsy Photographs*

Exhibits 44, 156, and 157 were introduced through Dr. Leisha Wood of the Travis County Medical Examiner's Office. Exhibit 44 is a close up of Stephens' face after it had been cleaned up but before the autopsy. The State used this photo so Dr. Wood could identify Stephens as the person on which she performed the autopsy. She explained that the dark purple areas around Stephens' eyes were due to the fracturing of Stephens' skull which caused blood to leak into the soft tissue. Exhibits 156 and 157 are photos taken during the autopsy of the entrance and exit wounds, respectively. Both wounds are clean. These photos are not gruesome, and only depict the damage perpetrated by Schmotzer. Likewise, after reviewing the photos in light of the relevant factors, we hold that the probative value of the autopsy photos was not substantially outweighed by the danger that they unfairly prejudiced Schmotzer.

Accordingly, the trial court did not err in overruling Schmotzer's objections to these Exhibits, and his second issue is overruled.

### PRO SE BRIEF

Unhappy with his appointed counsel's brief, Schmotzer requested that we allow him to file his own brief and that we allow him access to the record. He also presented a copy of his own brief and later, a motion for an evidentiary hearing. The State filed a motion to strike Schmotzer's brief.

A criminal appellant has no right to hybrid representation. *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007); *Scheanette v. State*, 144 S.W.3d 503, 505 n.l (Tex. Crim. App. 2004); *Ex parte Taylor*, 36 S.W.3d 883, 887 (Tex. Crim. App. 2001); *Patrick v.*

*State*, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995); *Turner v. State*, 805 S.W.2d 423, 425 n.1 (Tex. Crim. App. 1991). For example, when an appellant has counsel and counsel has filed a brief, the appellant has no right to file another brief. *See Scheanette*, 144 S.W.3d at 505 n.l; *Patrick*, 906 S.W.2d at 498; *Turner*, 805 S.W.2d at 425 n.1. But this prohibition on hybrid representation is not absolute. *See, e. g.*, *Warren v. State*, 98 S.W.3d 739, 741 (Tex. App.—Waco 2003, pet. ref'd). We can consider pro se issues *in the interest of justice* even though an appellant has no right to hybrid representation. *See Williams v. State*, 946 S.W.2d 886, 892 (Tex. App.—Waco 1997, no pet.); *see also Guyton v. State*, No. 10-07-00070-CR, 2009 Tex. App. LEXIS 839 (Tex. App.—Waco Feb. 6, 2009, pet. ref'd) (not designated for publication).

In an abundance of caution, we reviewed the issues raised in Schmotzer's pro se brief and find that the "interest of justice" does not require that we consider, address, or resolve the issues Schmotzer has presented. Accordingly, Schmotzer's "Motion for Leave to File Supplamental Brief," "Motion to Obtain Documents, Transcripts and or Complete Appellate Record," "Motion to Suspend Requirements under TRAP Rule 2," and Motion for Evidentiary Hearing" will not be acted upon. *See Ex parte Bohannan*, No. AP-76,363, 2011 Tex. Crim. App. LEXIS 618, *2 n.1 (Tex. Crim. App. May 11, 2011) ("Because applicant is represented by counsel, we disregard his numerous pro se submissions and take no action on them."). Further, the State's motion to strike Schmotzer's brief is dismissed as moot.

## CONCLUSION

Having overruled each of Schmotzer's issues properly presented, we affirm the trial court's judgment.


        TOM GRAY
        Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed October 12, 2011
Do not publish
[CRPM]