Opinion filed January 31, 2013



In The

# Eleventh Court of Appeals

No. 11-11-00015-CR

## DARRELL HENDERSON, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 272nd District Court**
**Brazos County, Texas**
**Trial Court Cause No. 10-03632-CRF**

## OPINION

The jury convicted Darrell Henderson of the offense of theft of property with a value of less than $1,500 with two prior convictions for theft. Henderson pleaded true to an enhancement paragraph, and the trial court assessed his punishment at confinement for five years. We affirm.

While he was working the night shift traffic patrol on June 2, 2010, Andy Drake, a police officer for the City of College Station, stopped the vehicle that Henderson was driving; Officer Drake thought that there was neither a rear license plate nor a rear license plate light on the vehicle. After he stopped Henderson, Officer Drake noticed that there was indeed a paper license tag on the vehicle, but it was loose and made it appear that there was neither a license tag nor a light to illuminate it. Officer Drake testified that he intended to issue a warning. He went

to the passenger side of the vehicle that Henderson was driving. When he did, he saw that Henderson and a passenger appeared to be "fumbling" with something in the front passenger compartment. The officer shone his flashlight into the vehicle and saw that Henderson and the front-seat passenger were "fumbling" with the glove box, and in the process, it came off and fell to the floor.

When Officer Drake asked Henderson for his driver's license, Henderson could not produce one. The only personal identification that Henderson could produce was a TDCJ offender's identification card. He did, however, produce what was purported to be a rental agreement for the vehicle he was driving. Officer Drake was suspicious of the rental receipt because it was a "skewed" photocopy, and Henderson's name and the vehicle information were handwritten, "not typewritten or carbon copy like you would commonly see on a rental agreement." Henderson testified that the lawyer who was representing him in a personal injury case rented it for him to replace his wrecked truck. The results of a title check revealed that the vehicle actually was registered to Henderson.

Officer Drake became concerned that there was "some type of narcotics or some other type of contraband" in the vehicle. His concern was based upon several indicators in addition to the suspicious activities described above: he knew that it was common for narcotics "smugglers" to use rental vehicles; Henderson would not make eye contact; the front passenger "kept his head and his eyes straight forward and kept his hands flat on top of his thighs, never shifting his weight, never looking directly at me"; the passenger finally "broke his very stoic stance and looked at me and started nodding very rapidly and agreeing with everything that [Henderson] was saying to me"; Henderson told Officer Drake that he had left Houston at 4:00 a.m. to check on his stepdaughter who was in a halfway house in Bryan; the arrest took place at about 4:20 a.m. near Bryan, which is over an hour drive away from Houston; Henderson gave the officer various other times at which he said he left Houston; and the officer thought that the glove box should not have broken off a rental car.

Officer Drake expressed his concern about the presence of drugs, specifically marihuana, to Henderson. He testified that, sometime after that, Henderson gave him consent to search the vehicle. He again asked Henderson for his consent to make sure he understood that he was giving consent to "check in the vehicle." According to Officer Drake, Henderson neither revoked that consent nor limited the scope of the areas to which it applied. Henderson, however,

2

testified that he knew there was no marihuana in the vehicle and that all he consented to was a search of the vehicle for marihuana.

During the subsequent search of the interior of the vehicle, Officer Drake discovered two GPS devices located inside the glove box that had fallen onto the floor of the vehicle. Only one of the devices, a Garmin, worked. At one point, Henderson told the officer that both of the devices were his. At another point, he said that one of them came with the rental car that he claimed he was driving. Henderson also testified that he had bought the Garmin at a flea market.

Although he claimed that the Garmin was his, Henderson testified that he "barely even [knew] how to work that thing." He said that he had people working for him who operated the device for him. Although Henderson denied it at trial, Officer Drake testified that Henderson told him that the home address entered into the device was either Henderson's home address or his wrecker/mechanic/"junking" business address. Henderson told the court that he told Officer Drake that the only address in the GPS device was a doctor's address in Red Oak. When Officer Drake went to his patrol car to check the device, he discovered that an address other than the addresses that Henderson had given him appeared as the home address on the Garmin. Because of the inconsistencies and other information known to him, Officer Drake took the device. Henderson testified that he did not give Officer Drake consent to go through the GPS device or to take it. After he had taken the device to the police station, Officer Drake determined that the "home" address in the device was that of ServiceMaster Southwest. Jerome Janak testified at trial that he was the owner of that business.

Janak testified that he had experienced a theft at that business location on May 21, 2010, approximately ten days before Officer Drake stopped Henderson's vehicle. Thieves broke into a van and took a GPS device from it. He identified the GPS device recovered from Henderson's vehicle as the one that had been stolen from the van at his place of business. He identified the "home" address on the GPS device found in Henderson's vehicle as that of his business, ServiceMaster Southwest. The thieves also cut three catalytic converters from under three company vehicles at Janak's place of business.

As Officer Drake progressed with his search and as he got closer to the trunk of the vehicle, Henderson increasingly appeared to be guarding the trunk of the vehicle. It appeared to the officer that Henderson did not want him "to get into the trunk of the vehicle." When Officer Drake searched the trunk of the vehicle, he found a catalytic converter and some power tools

3

known as Sawzalls that are capable of cutting through metal. The catalytic converter had been cut at an angle in a jagged fashion, appeared to be new, and had yellow paint on it. The blades on the Sawzalls had yellow paint on them also. At trial, Officer Drake said he also found cotton gloves, a hand file, wire cutters, a flashlight, and a headlamp—things, he said, that are commonly possessed by thieves. He also found a price list for "junk." That price list contained a price for "cats" (catalytic converters). The price list was dated May 24, 2010.

In his first point of error, Henderson challenges the trial court's denial of his motion to suppress. The trial court heard the motion during the trial. The basis of Henderson's written motion was that the "warrantless search of the vehicle was conducted without probable cause, consent or any other exception to the constitutional and statutory rules prohibiting illegal search and seizure." However, on appeal, Henderson states that he "challenges neither the initial investigatory detention nor the resulting search." He further narrows the issue for review when he states that the "issue for review is not the officer's right to search the vehicle, but the officer's actions in seizing the GPS and powering it up in his patrol vehicle and then his subsequent further seizure of the GPS to conduct additional investigation at the station."

Henderson bases his argument on appeal solely upon the Fourth Amendment to the Constitution of the United States. Before we decide whether there was an *impermissible* search and seizure in this case and before we consider any issues involving consent to search or search incident to arrest, we will first determine whether the officer's conduct related to the GPS device constituted a search or seizure of that in which Henderson either held a property-based interest or in which he enjoyed a reasonable expectation of privacy within the meaning of the Fourth Amendment. *United States v. Jones*, 132 S.Ct. 945 (2012); *Katz v. United States*, 389 U.S. 347, 360 (1967). Cases to the contrary notwithstanding, this is not a standing issue under the "rubric of standing," but is a substantive Fourth Amendment issue. *Rakas v. Illinois*, 439 U.S. 128, 139–40 (1978). As the United States Supreme Court has opined, a standing analysis is "more properly subsumed under substantive Fourth Amendment doctrine." *Id.* at 139; *see generally* Robert H. Whorf, *The Effects of Eliminating the Concept of Fourth Amendment Standing—Thirty Years in Hindsight*, 26 T.M. COOLEY L. REV. 555 (2009).

It was Henderson's burden to show that he had a property-based interest in the GPS device or that he had a reasonable expectation of privacy as far as the GPS device was concerned. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004). To show that he had a

4

reasonable expectation of privacy, an accused must normally prove (1) that, by his conduct, he exhibited an actual subjective expectation of privacy with a genuine intention to preserve something as private and (2) that circumstances existed under which society was prepared to recognize his subjective expectation as one that is objectively reasonable. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). To determine whether an accused's subjective expectation is one that society is prepared to recognize as objectively reasonable, *Villarreal* instructs us to consider (a) whether the accused had a property or possessory interest in the place invaded; (b) whether he was legitimately in the place invaded; (c) whether he had complete dominion or control and the right to exclude others; (d) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (e) whether he put the place to some private use; and (f) whether his claim of privacy is consistent with historical notions of privacy. *Id.* at 138–39.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When we review the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We give almost total deference to the trial court's rulings on (1) questions of historical fact (even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor) and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But, when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53. Therefore, when we review the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as in the case before us, the record is silent on the reasons for the trial

5

court's ruling or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we will imply the necessary findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. Unless the implied fact findings supported by the record are also dispositive of the legal ruling, we then review the trial court's legal ruling de novo. *Kelly*, 204 S.W.3d at 819.

As the sole judge of the weight and credibility of the testimony at the suppression hearing, the trial court could reasonably have disbelieved Henderson's testimony as to his claimed property and privacy interest in the GPS device. Furthermore, the trial court reasonably could have found that the GPS device was stolen property. We cannot say that society is prepared to recognize any subjective expectation of privacy Henderson may have had as one that is objectively reasonable under these circumstances. Additionally, from the facts that we have set out, it would be reasonable for the trial court to find that Henderson was not legitimately in possession of the GPS device, that he did not know how to operate the device, and that he did not take any precautions customarily taken by those seeking privacy. Based upon the facts we have recited, we cannot say Henderson showed that he had either a property interest or a reasonable expectation of privacy in the GPS device or its contents. The trial court did not abuse its discretion when it denied Henderson's motion to suppress. There was neither a search nor a seizure, as those terms are used in substantive Fourth Amendment law, of the GPS device because Henderson held neither a property interest nor a reasonable expectation of privacy in the device. Therefore, we need not discuss issues relating to consent or search incident to arrest. Henderson's first point of error is overruled.

In Point of Error Nos. Two and Three, Henderson challenges the sufficiency of the evidence to support his conviction. Specifically, he challenges the sufficiency of the evidence to show that the GPS device was owned by Janak and that Henderson's appropriation of the GPS device was unlawful. He does not challenge any of the other elements of the offense.

We will review Henderson's sufficiency challenges under the legal sufficiency standard set forth in *Jackson v. Virginia*. Under this standard, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443

6

U.S. 307 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing guilt. *Hooper v. State*, 214 S.W.3d 9, 14–16 (Tex. Crim. App. 2007). Circumstantial evidence alone can be sufficient to establish guilt. *Id.* at 15. In our review, we will give deference to the duty of the factfinder to resolve credibility issues and to weigh the evidence, including any reasonable inferences from that evidence. *Id.* at 13.

We hold that the evidence, when viewed in the light most favorable to the verdict, is sufficient to meet Henderson's objections on appeal in that it is sufficient to support the jury's verdict that the GPS was owned by Janak and that Henderson's appropriation of it was unlawful. As the factfinder, the jury was free to weigh the testimony that, even though Henderson claimed that the GPS was his, he did not know how to operate it; it did not contain the address that he said it would; he attempted to hide it when Officer Drake stopped his vehicle; he told multiple stories about how he acquired the device; he said he had a receipt for the device in his vehicle, but no such receipt was found. Additionally, Janak identified the GPS as the one stolen from his company's vehicle; Henderson was in possession of a catalytic converter with yellow paint matching the blades of Sawzalls also found in his possession; Janak testified that catalytic converters had been cut from under three of his company vehicles; Henderson was in possession of items commonly used by thieves; and Henderson made many other contradictory statements that we have outlined above.

We have reviewed all of the evidence in the light most favorable to the verdict, and we determine that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Henderson's second and third points of error are overruled.

The judgment of the trial court is affirmed.

January 31, 2013
Publish. *See* TEX. R. APP. P. 47.2(b).
Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

JIM R. WRIGHT
CHIEF JUSTICE

7