

# IN THE
# TENTH COURT OF APPEALS
_____

## No. 10-11-00385-CR

**HORATIO DEMOND DAVIS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

**From the 413th District Court
Johnson County, Texas
Trial Court No. F44542**

_____

## No. 10-11-00391-CR

**JOSEPH VANBURAN JAMES,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

**From the 413th District Court
Johnson County, Texas
Trial Court No. F44563**

## MEMORANDUM OPINION

After reaching plea bargains on charges of burglary of a building and engaging in organized criminal activity, co-defendants and appellants Horatio Davis and Joseph James appeal in their respective cases the trial court's denial of their motions to suppress. They each assert in a sole issue that the trial court erred in denying their motions to suppress. We will affirm.

At the suppression hearing, Cleburne Police Department Officer Neal Sandlin testified that he and Officer Riddell responded to a burglary alarm at a Shell gas station at 3714 North Main Street in Cleburne around 2:00 a.m. on the morning of April 1, 2010. Upon arrival, they found that the glass front door had been shattered by a large rock, an interior office door was kicked in, and cigarette cartons had been taken. They met with Cindy Sopher, the store's general manager, and viewed the store's surveillance videotape. The video showed four black males wearing masks and black gloves while burglarizing the store. One of the burglars was wearing a hoodie, blue-jean shorts, and black shoes. The video also showed a 2004 four-door Ford Taurus that Sandlin believed was maroon in color. He also said that the car appeared to have factory wheels with a five-star pattern.

Sandlin broadcast descriptions of the crime scene, the suspects, and their car, and a still photograph of the car from the video, and a description of the suspects and their car was made available to other Cleburne police officers at their pre-shift briefing.

Approximately twenty-four hours later (at 2:23 a.m. the next day), the Cleburne

Police Department was notified of another possible break-in at the same gas station. Sandlin said that Cleburne Police Officer Summey, while traveling northbound on North Main Street en route to the gas station, noticed a car matching the description from the previous night's burglary parked on the southbound shoulder of the 1600 block of North Main Street with its lights on. As Summey passed by the car, it took off in a southbound direction. Finding this suspicious, Summey radioed to other officers what he had observed and that he believed that the car matched the suspect vehicle's description. Cleburne Police Sergeant Kenneth Meador, who was on his way to the store, heard Summey's broadcast, saw the suspect car in the 1200 block of North Main Street, and turned around and made a traffic stop in the 900 block of North Main Street. He saw only one other vehicle (a pickup) on the road at that time.

Meador recalled that he had been told in his shift briefing that the suspect vehicle was a "dark color possibly maroonish Ford Taurus." He said that it was also described as "burgundy colored." Meador's report first says that the car was a "brown to maroon colored Ford Taurus," and later in his report he described it as "reddish-brown" in color. Meador explained that, at 2:30 a.m., artificial lighting can distort colors and what might look like reddish-brown might actually be maroon in daylight.

Sandlin, also responding to Summey's radio broadcast, arrived at the scene of the stop just seconds after Meador had made the stop; he said that traffic was very light at that time. Sandlin said it was "very significant" that a matching vehicle was within five minutes of the store that was burglarized again within twenty-four hours.

On cross-examination, Sandlin reiterated that the suspect vehicle appeared to

him to be maroon in color on the video, but he then said that Meador's report stated that the car that was stopped was "reddish brown" in color. He also said that Officer Riddell's report on the initial burglary described the suspect vehicle's color as "red or brown." In Sandlin's opinion, based on his training and experience, "reddish brown" and maroon are "fairly close:" "What I see as one color I may describe as maroon; somebody else may describe reddish brown; somebody else may say red. It's not that far off."

Sandlin initially observed that the car's wheels were an exact match of the one in the video. In the car were four black males and one female. The driver was James and one of the passengers was Davis. James was wearing a black hoodie and blue-jean shorts. While waiting on the warrant check, Summey radioed to Sandlin and Meador to confirm that the store had been burglarized again. In the warrant check, James and two of the occupants had outstanding warrants. As Davis got out of the car, Sandlin observed a black glove under where Davis had been sitting.

Davis, James, and the other two occupants/co-defendants (Marvin Jackson and Credrick Shepherd) all filed motions to suppress, and the trial court jointly heard the motions. Davis and James asserted that reasonable suspicion did not exist for Meador to make the traffic stop. Sandlin and Meador each testified that there was reasonable suspicion to make the traffic stop.

At the conclusion of the hearing, the trial court denied the motions to suppress,

and in James's case, the trial court made findings of fact and conclusions of law.[1]  The trial court concluded:

> That under the totality of the circumstances reasonable suspicion existed for Sergeant Meador to stop the suspect vehicle in which the defendant was a passenger.  The stop was lawful based on the vehicle matching the description of the suspect vehicle used in the burglary the previous evening, the suspect vehicle was in close proximity, within four miles or five minutes, to the offense location and the suspect vehicle was located while officers were responding to an additional burglary at the same location.

Davis filed a motion to reconsider asserting that his motion to suppress should be granted because the store's surveillance video that showed the suspect vehicle was no longer in existence.  James filed an amended motion to suppress making the same assertion as Davis's motion to reconsider.  The trial court denied those motions and made findings of fact and conclusions of law in support of that denial in both cases.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).  In reviewing the trial court's decision, we do not engage in our own factual review.  *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give almost total deference to the trial

---

[1] James made a request for findings and conclusions; Davis did not.

court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Johnson*, 68 S.W.3d at 652-53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *Kelly v. State*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

When the trial court does not enter findings of fact, we infer the necessary factual findings that support the trial court's ruling if the evidence, viewed in the light most favorable to the ruling, supports the implied fact findings. *Garcia-Cantu v. State*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police can stop and briefly detain a person for investigative purposes if they have a reasonable

suspicion supported by articulable facts that criminal activity may be afoot. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citing *Terry*, 392 U.S. at 30). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005). This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.* at 492. Whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion is a legal question that we review de novo. *See Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

Davis and James each argue that Meador lacked reasonable suspicion to stop the suspect vehicle. The trial court made the following findings of fact in James's case:

- After the initial burglary of the store, Sandlin made a communication broadcast of the suspect vehicle's description, which was heard by Meador and Summey.

- Summey, Meador, and Sandlin responded to the store's burglar alarm the next night, and while Summey was en route to the store, he observed a vehicle matching the suspect vehicle stopped on the side of the road within five minutes of the store. As Summey drove past the matching vehicle, it pulled onto the road. Meador and Sandlin both said that traffic was light and there were few other cars on the road at that time.

- Summey radioed his observation of the matching vehicle and gave its location and direction of travel.

- Meador located the matching vehicle and observed that it was a "brown to maroon" Ford Taurus and believed it might be the suspect vehicle from the

previous night's burglary.

- In Sandlin's training and experience, it would be extremely unlikely that another car matching the suspect vehicle would be located in such close proximity to the two burglaries and even less of a probability in the early morning hours when the suspect vehicle was stopped.

In his brief, James's only argument that reasonable suspicion did not exist is that Sandlin testified that the suspect vehicle was maroon, which is not reasonable suspicion to stop a brown vehicle the next day. Sandlin, however, did not say that the suspect vehicle was maroon; he said that it "appeared" to him to be maroon on the video, and he explained that, to him, "reddish brown" and maroon are fairly close in color.

Davis argues in his brief that because Meador did not conduct an investigative detention of Davis once the traffic stop occurred, we should determine whether Meador had probable cause to arrest Davis. But at the suppression hearing, defense counsel twice asserted that the only issue was whether the stop was illegal. We agree with the State that Davis's failure-to-investigate/arrest argument cannot be raised for the first time on appeal. *See* TEX. R. APP. P. 33.1(a)(1); *Martinez v. State,* 91 S.W.3d 331, 335-36 (Tex. Crim. App. 2002).

We hold that the trial court did not err in concluding that reasonable suspicion existed to make the traffic stop.

James additionally argues in his sole issue that the trial court erred in denying the motion to reconsider because the State should have allowed defense counsel to inspect the surveillance video of the suspect vehicle. It appears that the surveillance video of the suspect vehicle was destroyed. The record reflects defense counsel's

statement to the trial court that the video was given to the store's insurance company and was destroyed. Defense counsel also stated that there was no evidence that the State "did anything wrong or deliberately tried to withhold" the video from the defense.

In its findings and conclusions on the motion to reconsider, the trial court concluded: "There is no legal requirement that the State must produce the store surveillance videotape in order to justify the reasonable suspicion for stopping the vehicle in which the defendant was a passenger."

In his brief, James's only argument is that the State should have allowed defense counsel to inspect the video and cites a statute (TEX. CODE CRIM. PROC. ANN. art. 39.14 (West Supp. 2012) and a case (*McBride v. State*, 838 S.W.2d 248, 251 (Tex. Crim. App. 1992)) pertaining to a defendant's right to inspect evidence. James cites no authority and makes no argument that the motion to suppress should have been granted because the video was unavailable to the defense. As such, this part of James's sole issue is overruled as inadequately briefed.

We overrule Davis's and James's sole issues and affirm the trial court's judgments in each case.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Chief Justice Gray concurs with a note)*
Affirmed

Opinion delivered and filed November 7, 2013
Do Not Publish
[CR25]

*(Chief Justice Gray joins in the judgment of the court in each appeal to the extent it affirms the trial court's judgment. A separate opinion will not be issued in either proceeding.)