**Opinion issued January 23, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00175-CR

————————————

**DERICK DEWAYNE HUNT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Case No. 1508362**

---

## MEMORANDUM OPINION

Derick Hunt was convicted by a jury of possession, with intent to deliver, of between four and 200 grams of cocaine. *See* TEX. HEALTH & SAFETY CODE § 481.115(a), (d). Hunt pleaded "true" to two enhancement paragraphs, and the trial court assessed punishment at 32 years' imprisonment. Hunt contends (1) that

the evidence is legally insufficient to support his conviction for knowing or intentional possession of cocaine and (2) that either his motion to suppress or his trial objections to certain evidence should have been sustained because the evidence was obtained by a warrantless search that violated the Fourth Amendment. We affirm.

## Background

Houston Police Officers V. Vu and A. Merino were on patrol when a driver, R. Gonzalez, flagged them down to report an incident of road rage. Gonzalez told Officer Merino that another car had stopped at a nearby intersection and that its driver exited the car, approached Gonzalez's car, cursed at Gonzalez, walked back to his own car, and attempted to pull out an object that Gonzalez thought was maybe a bat or a gun. While the officers were speaking with Gonzalez, the other car "U"-turned in the intersection and pulled alongside where the officers were speaking with Gonzalez. No one but the driver was in the other car. Upon arriving, the driver, Derick Hunt, almost immediately told Officer Vu, "I didn't do it, I didn't do it." Because everyone's cars were blocking the road, the officers asked Gonzalez and Hunt to pull into a nearby parking lot.

Once all three cars were parked in the lot, both Gonzalez and Hunt exited their cars and started talking to each other. Their interaction was initially hostile and then became harmonious. Gonzalez said that he did not want to press charges.

Hunt hugged Gonzalez. Officer Vu then told both Hunt and Gonzalez that they were free to leave. Gonzalez left.

Hunt remained at the scene though he had not been ordered to do so. Officer Vu continued to talk with Hunt. While they talked, Officer Merino approached the car that Hunt had been driving. He did so because Hunt's hug had struck him as odd and because he wanted to ensure that no weapons had been involved. As Officer Merino approached the car's open front passenger window, he smelled a strong odor of marijuana.

Officer Merino told Officer Vu that he smelled marijuana, so Officer Vu told Hunt that he was now being detained. Hunt then tried to reach back into the car. Hunt admitted that there was marijuana in the car, telling Officer Vu that he only had a little bit inside the vehicle.

Because of this, Officer Merino searched the car, starting with its center console. When he opened the center console, the smell of marijuana got stronger. When he looked into the console, he saw a gun, which contained a loaded magazine. He also found in the console a white grocery bag, which contained a large amount of marijuana, about 114 grams of cocaine, and about 50 pills in multiple pill bottles. Two of the pill bottles bore the name "David Cavanaugh." Lastly, he found in the console $311 in small denominations, weight scales, and small baggies.

Hunt was prosecuted for knowing or intentional possession of cocaine in an amount between four grams and 200 grams. *See* TEX. HEALTH & SAFETY CODE § 481.115(a), (d). In both a motion to suppress and in trial objections, Hunt challenged the admission of the evidence that Officer Merino discovered in the car. The trial court overruled both the motion to suppress and the trial objections. After a jury trial, Hunt was convicted and was assessed punishment at 32 years' imprisonment. This appeal followed.

**Legal Sufficiency of Evidence of Knowing or Intentional Possession**

We review Hunt's legal-sufficiency challenge under the standard in *Jackson v. Virginia,* 443 U.S. 307 (1979). *See Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015). We examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19. Our review includes both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from that evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of the witnesses and of the weight given to their

testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

In a prosecution for possession of a controlled substance, a necessary element of the offense is the defendant's actual care, custody, or control of the controlled substance. *See* TEX. HEALTH & SAFETY CODE § 481.115(a); *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). The evidence, whether direct, circumstantial, or both, "must establish that the defendant's connection with the drug was more than fortuitous." *Evans*, 202 S.W.3d at 161. This is the "affirmative links" rule, "which protects the innocent bystander—a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to someone else's drugs." *Id.* at 161–62. "Mere presence at the location where drugs are found is . . . insufficient, by itself, to establish actual care, custody, or control of those drugs." *Id.* at 162. "However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., 'links'), may well be sufficient to establish that element beyond a reasonable doubt." *Id.* "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Id.*

The kinds of links that the Court of Criminal Appeals and our sister courts of appeals often look to include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and

5

the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at 162 n.12.

Hunt focuses his legal-sufficiency challenge on whether the State proved beyond a reasonable doubt that he knowingly or intentionally possessed the cocaine. Hunt was the only occupant of the car. He voluntarily talked with Officer Vu. During that conversation, Officer Merino smelled marijuana through the car's open front passenger window. Hunt was therefore detained. Hunt admitted to Officer Vu that he had marijuana inside the vehicle. Officer Merino then searched the car's closed center console and found a gun containing a loaded magazine and a white grocery bag containing marijuana, 114 grams of cocaine, and pills.

Based on this evidence, when viewed in the light most favorable to the verdict, the jury could reasonably have found that Hunt knowingly or intentionally possessed the cocaine. Hunt admitted that he "had"—that is, possessed—marijuana in the car. The same bag that contained Hunt's marijuana also contained the 114 grams of cocaine. There is evidence, therefore, that Hunt knew that he had cocaine

6

in the white grocery bag in the car he was driving. There is no evidence suggesting that Hunt was simply near someone else's cocaine. On the contrary, the evidence shows the presence of *Evans* links 1 (Hunt was present during the search), 3 (Hunt was near the cocaine, and it was accessible to him), 6 (Hunt made an incriminating statement), 9 (Officer Merino smelled marijuana), 10 (Officer Merino found marijuana, weight scales, and baggies), 12 (Officer Merino had to open the console), and 13 (Officer Merino found $311). *See* 202 S.W.3d at 162 n.12.

In response, Hunt argues that there are nine sets of facts and circumstances that tend to show that no rational trier of fact could have found knowing or intentional possession of cocaine:

1. Officer Vu did not request DNA or fingerprint testing of the gun or bullets, though Officer Vu "agreed that if he could show that Mr. Hunt had handled the weapon that was sitting on top of the drugs, that would help show Mr. Hunt knew that was there."

2. During the search, Hunt did not appear to be high, to be intoxicated, to have bloodshot eyes, to be under the influence of drugs, or to smell like marijuana.

3. The car Hunt was driving was a rental car owned by Enterprise.

4. Officer Merino did not find any paperwork in the car indicating that Hunt owned the car.

5. The pill bottles found in the car's center console were not labeled with Hunt's name.

6. No one tried to find any fingerprints on the weight scales or baggies.

7. Officer Merino did not receive any DNA or fingerprint results from the gun.

7

8. Two pill bottles found in the grocery bag bore the name "David Cavanaugh."

9. Officer Merino did not know who David Cavanaugh is and did not look him up on his patrol car's computer.

These do not alter the analysis. We must examine the evidence in the light most favorable to the verdict. In that light, Hunt's point number one, for example, does not undermine Hunt's having admitted to possessing the marijuana that was in the same bag as the cocaine. Showing that Hunt knew that the marijuana was in the bag strongly suggests that he knew the cocaine was in the bag too. Even Hunt agrees with this logic by contending that, had Hunt known that the gun was in the console, that "would help show that Mr. Hunt knew" that the cocaine was in the console too. Hunt's point number two demonstrates, at most, that *Evans* link 4 is not present, but that does not undermine the logical force of the separate presence of links 1, 3, 6, 9, 10, 12, and 13. Hunt's points three through nine raise issues about whether Hunt owned the car that he was driving; recently handled the gun, weight scales, and baggies; or owned the pill bottles. But none of this necessarily undermines the independently reasonable conclusion that Hunt knowingly or intentionally possessed both the marijuana and the cocaine in the white grocery bag. We overrule Hunt's first issue.

**Denial of Motion to Suppress and Trial Objections to
Evidence Obtained from Warrantless Search**

In reviewing a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). The trial judge, unlike us, is uniquely situated to observe witness demeanor and appearance. *Id.* Consequently, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony when entertaining a motion to suppress. *Id.* at 24–25. When a trial court makes explicit fact findings, we determine whether the evidence, viewed in the light most favorable to the trial court's ruling, supports these fact findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013).

In reviewing whether evidence obtained by a warrantless search is properly admitted or suppressed, we must determine what type of citizen–police interaction is at issue—a consensual encounter, an investigative detention, or an arrest. *Id.* at 191. Consensual encounters do not implicate Fourth Amendment protections. *Id.*

> The trial court stated the following when it denied the motion to suppress:
>
> The defendant's initial encounter with Officers Merino and Vu was consensual. Officer Merino was well within his legal rights and within the -- to be where he was when he smelled marijuana through the open window of the defendant's car. Search subsequent to that was legally allowed where the guns and drugs were recovered.

The trial court's finding that Hunt's initial encounter with Officers Merino and Vu was consensual is supported by the record. The trial court could have believed

9

Officer Vu's testimony that there was no traffic stop, that Hunt was not detained until after Officer Merino smelled the marijuana, and that Officer Vu told Hunt after Hunt hugged Gonzalez that Hunt was free to leave. Amid Hunt's admittedly consensual encounter with the officers, Officer Merino approached Hunt's car and its open window and smelled marijuana through the open window.

Though Hunt admits that this interaction was a consensual encounter, he relies on investigative-detention case law to argue that the search was unconstitutional. Because Hunt's encounter with the officers was consensual and was not a detention, Fourth Amendment protections are not implicated. *See Johnson*, 414 S.W.3d at 191.

In a prior instance when the police did not detain a driver but the driver instead voluntarily stopped the car and exited it, the Court of Criminal Appeals held that the police did not initiate an unlawful search merely by walking toward the stopped car, smelling marijuana, and then detaining the driver. *See Stewart v. State*, 603 S.W.2d 861, 862 (Tex. Crim. App. 1980). This case is akin to *Stewart* because, in both instances, the search of a car that produced evidence of possession of a controlled substance resulted simply from the officers' having approached a car that the defendant had opened on his own without having been detained. *See id.*

Hunt argues that the case is more akin to *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), which he characterizes as involving an unlawful "police

10

extension of a traffic stop in order to conduct a . . . sniff . . . ." There, a police officer pulled over a driver for having driven on the shoulder, a violation of state law. The officer collected the driver's license, registration, and proof of insurance; ran a records check on the driver; returned to the driver's car; gathered the passenger's driver's license; questioned the driver and passenger about where they were coming from and where they were going; ran a records check on the passenger; issued a written warning to the driver; explained the warning; and returned the driver's and passenger's documents. *Rodriguez*, 135 S. Ct. at 1612–13. At that point, the officer had handled the matter for which the stop was made. *See id.* at 1613. The officer then prolonged the encounter to conduct a dog sniff of the car. *Id.* The Supreme Court of the United States held that

> a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket for the violation.

*Id.* at 1612 (alterations in original).

*Rodriguez*'s outcome depended on a preexisting, and completed, traffic stop before a dog sniff. *See id.* ("This case presents the question whether the Fourth Amendment tolerates a dog sniff conducted after completion of a traffic stop."); *id.* at 1613 ("He moved to suppress the evidence seized from his car on the ground, among others, that [the officer] had prolonged the traffic stop without reasonable

11

suspicion in order to conduct the dog sniff."); *id.* at 1614 ("We granted certiorari to resolve a division among lower courts on the question whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff.").

This case does not involve a traffic stop. Hunt voluntarily stopped his car, exited it, and spoke with Officer Vu. Officer Merino's approach of the car's open window and smell of marijuana did not prolong the time Hunt needed to stay at the scene. *Rodriguez* is inapplicable. We overrule Hunt's second issue.

## Conclusion

We affirm the trial court's judgment.

Harvey Brown
Justice

Panel consists of Justices Keyes, Brown, and Lloyd.

Do Not Publish. TEX. R. APP. P. 47.2(b).

12