

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00432-CR

———————————————

JACOB COMEAUX, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 3
Tarrant County, Texas
Trial Court No. 1584652

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

The State indicted Appellant Jacob Comeaux for the offense of driving while intoxicated and alleged that his blood-alcohol level at the time of analysis was greater than 0.15. Comeaux filed a motion to suppress, which the trial court denied.[1] On appeal, Comeaux argues in a single point that the trial court erred by denying his motion to suppress because the trial court relied on the results of an improperly administered horizontal gaze nystagmus (HGN) test and failed to consider evidence that one officer at the scene had doubted that Comeaux was intoxicated. Because the trial court did not base its decision on the HGN test results but instead denied the motion to suppress after properly considering the totality of the circumstances, we affirm.

## II. Background Facts

On the morning of January 30, 2019, Comeaux was involved in a serious single-vehicle accident on I-20 in Fort Worth. Officer Timothy Trull was among the police officers and medics who responded to the scene. Officer Trull noted that Comeaux's vehicle had sustained severe and extensive damage: it had two flat tires,

---

[1]Comeaux thereafter pleaded guilty pursuant to a plea bargain; in accordance with the terms of the plea bargain, the trial court sentenced Comeaux to 180 days in jail, suspended the sentence, and placed him on community supervision for eighteen months. The trial court's amended certification reflects that this "is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial and not withdrawn or waived, and the defendant has the right of appeal." *See* Tex. Code Crim. Proc. Ann. art. 44.02; Tex. R. App. P. 25.2(a)(2)(A).

the airbag apparatus was detached from the steering wheel, and the body showed damage consistent with the car having rolled over itself several times. In Officer Trull's opinion, "The car . . . looked like it had been totaled."

Upon speaking with medics, Officer Trull learned that Comeaux was apparently unaware of the severity of the accident and had told first responders that he simply needed to change his two flat tires and that he would then be on his way to Odessa. Officer Trull spoke with Comeaux and noted that he seemed disoriented—which Officer Trull explained was normal for an accident victim but was also a possible sign of intoxication—and that he had watery eyes and the odor of alcohol on his breath. In addition to Officer Trull's observations of Comeaux while he was seated in his vehicle, one of the medics on the scene told Officer Trull that she had smelled alcohol on Comeaux's breath. Officer Trull decided to investigate his belief that Comeaux was intoxicated.

Officer Trull testified that as the primary officer on this case, he took responsibility for testing Comeaux's sobriety. Officer Trull listed the three field sobriety tests—the walk-and-turn, the one-leg-stand, and the HGN tests—and explained that the uneven terrain of the median, Comeaux's complaint of a leg injury, and the traffic on the freeway shoulder made it impractical to administer the walk-and-turn and the one-leg-stand tests. So Officer Trull proceeded to administer only the HGN test. Officer Trull testified that he had followed the correct steps in administering the HGN test and that Comeaux had exhibited six out of six clues.

3

The video from Officer Trull's body camera was admitted into evidence. At various points throughout Officer Trull's encounter with Comeaux, the camera is not pointed toward Comeaux. However, the video shows the damage to the vehicle and the issues that Officer Trull encountered while trying to administer the HGN test to Comeaux, including that he was swaying and unsteady and was unable to remain engaged with Officer Trull for any period of time without stepping away or brushing his hand across his face and eyes. Comeaux exhibited emotional swings during his interactions with Officer Trull, and "[a]t one point, [Comeaux] was cursing at [Officer Trull]."

Officer Trull testified that after administering the HGN test, his "decision was to arrest [Comeaux] based on the totality of the circumstances." Officer Trull explained what he meant by the totality of the circumstances:

> I got dispatched to an accident. When I arrived on the scene, I see a vehicle that looks like it's been in an accident. When I arrive on the scene, I see [Comeaux] seated in the vehicle, the engine is running. I smell alcohol. He's talked to a medic. The medic thinks that he may have alcohol coming from his body. He told the medics that if he just changed his tires, he could just go on down to Midland. Clearly, if you looked at the vehicle and the tires, you're not changing them[,] and you're not driving to Midland–Odessa with that vehicle in that shape. . . . The claim is preposterous.
>
> Then when I'm talking to him, I smell the alcohol. I see his watered eyes. And there's a very, like, almost a stunned reaction, which is common with people in accidents, but it's also very common with people who are intoxicated. At that point, I arrest for the totality of the circumstances.

4

On cross-examination, Officer Trull testified that he had heard one of the other officers communicate that she did not think that Comeaux was intoxicated, but Officer Trull explained that the officer who had communicated that was "not the one who [had] investigated." Officer Trull also testified during cross-examination that he had asked Comeaux whether he was wearing glasses or contacts and had confirmed with the medics that Comeaux was medically cleared but did not ask Comeaux whether he was epileptic or had received a head injury. Officer Trull agreed that an HGN test takes at least one minute and fifty-two seconds to administer properly but that due to the challenging circumstances presented by the scene, he had gone through the steps of the test very quickly, completing it in only twenty-seven seconds. Officer Trull acknowledged that due to his rushing through the steps, the HGN test that he had performed on Comeaux was not a valid test according to the National Highway Traffic Safety Administration manual.

After hearing the testimony above, the trial court denied the motion to suppress. Although the trial court did not issue a separate document with findings of fact and conclusions of law, the order denying the motion to suppress sets forth the facts that the trial court relied on and the conclusions drawn from those facts as follows:

Application.

[C]ourts have consistently found that an arresting officer has probable cause to arrest a defendant, despite the lack of a standard field sobriety

5

test, when the totality of the circumstances would warrant a prudent person to believe that the defendant has committed an offense.

> . . . [D]*espite the invalid HGN test in the present case, the remaining factors establish probable cause when considered together.*

Here, the facts to be considered in totality are that the Defendant had an odor of alcohol on his breath, was involved in a severe single-vehicle accident, swayed while he walked, complained of prior leg injuries that would invalidate him as a candidate for the walk-and-turn and one-leg-stand parts of a field sobriety test, did not cooperate with the police, and appeared unaware of the accident. While the Officer did not detect empty containers on the scene or ask the Defendant whether he had suffered any head injuries, he did note that the medical personnel on the scene had medically cleared the Defendant of any injuries. Given these specific articulated facts, the officer in the present case had probable cause, when considering the totality of the circumstances, that the Defendant had committed an offense.

Conclusion.

Therefore, the officer in this case articulated several specific facts besides the HGN test results that led him to believe that he had probable cause to arrest the Defendant in this case. These facts [were] obtained through both personal knowledge and knowledge from other officers and medics at the scene. While a field sobriety test is a factor to consider in a DWI investigation, it is not a required element to establish probable cause.

In conclusion, the Defendant's Motion to Suppress is Denied[.][2] [Emphasis added.]

---

[2]The trial court's order denying the motion to suppress was in a form akin to an appellate opinion; it contained a one-page recitation of the "Facts of the Case," a "Law Analysis" section that discussed several cases, an application section, and a conclusion. Although the portion that we quoted is from the application section and the conclusion of the order, for purposes of our analysis, we treat these as findings of fact and conclusions of law. *Cf. Whitfield v. State*, 430 S.W.3d 405, 414 (Tex. Crim. App. 2014) (Alcala, J., concurring) ("[R]egardless of how these particular findings of fact were labeled, this Court has often said that we apply the law by focusing on

### III. No Error in Denying Motion to Suppress

In a single point, Comeaux argues that the trial court erred by denying his motion to suppress because there was no probable cause for his arrest. Specifically, Comeaux argues that "when the trial court specifically relie[d] on a test result[ that] Officer Trull admitted was not valid, combined with the fact that there was evidence that at least one other officer on the scene did not believe [that Comeaux] was intoxicated," the trial court erred by denying his motion to suppress. Our review of the record demonstrates that the trial court properly considered the totality of the circumstances in concluding that probable cause existed for Comeaux's arrest.

#### A. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Therefore, we defer almost totally to the trial court's rulings on (1) questions of historical fact, even if the trial court

substance over form so that we treat a matter based on what it is rather than how it is named.").

7

determined those facts on a basis other than evaluating credibility and demeanor, and (2) application-of-law-to-fact questions that turn on evaluating credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the witnesses' credibility and demeanor, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a suppression motion, we must view the evidence in the light most favorable to the ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

### B.     Applicable Law

Probable cause for a warrantless arrest exists if, at the time the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person to believe that the arrested person had committed or was committing an offense. *State v.*

8

*Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011); *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). "The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of the circumstances facing the arresting officer[.]" *Amador*, 275 S.W.3d at 878 (citation omitted).

### C. Analysis

Here, Comeaux argues that Officer Trull did not have probable cause to arrest him because the results of the HGN test were not valid and because at least one other officer on the scene had concerns about whether Comeaux was intoxicated. We should not, as Comeaux does, look at the facts in existence piecemeal or isolate our review to those facts elicited by or beneficial to the defense. *See Morales Chavez v. State*, No. 03-17-00637-CR, 2019 WL 2293566, at *5 (Tex. App.—Austin May 30, 2019, no pet.) (mem. op., not designated for publication). Because we are required to consider the totality of the circumstances, a divide-and-conquer or piecemeal approach is prohibited. *Wiede*, 214 S.W.3d at 25. By focusing only on what Comeaux considers to be evidence showing a lack of intoxication—that the HGN test was improperly administered and that one officer had communicated that she did not believe Comeaux was intoxicated—he overlooks or minimizes the significance of the evidence of intoxication that Officer Trull personally observed and that is reflected in the officer's body-cam video.

9

With regard to the trial court's alleged consideration of the HGN test results, Comeaux's brief ignores the statements in the trial court's order that a field sobriety test is "not a required element to establish probable cause," that it excluded the HGN test results from its analysis, and that it relied on Officer Trull's testimony that included numerous specific facts—other than the HGN test results—that established probable cause, including that Comeaux (1) had smelled of alcohol; (2) was involved in a severe single-vehicle accident; (3) had swayed while he walked; (4) did not cooperate with police; (5) had exhibited red, watery eyes; and (6) had seemed unaware that he had been involved in a serious traffic accident. These facts support a finding of probable cause. *See Morales Chavez*, 2019 WL 2293566, at *4 (citing *Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985), and listing signs of intoxication, including slurred speech, bloodshot eyes, odor of alcohol on person, unsteady balance, staggered gait, odor of alcohol on breath). With regard to the testimony that one officer on the scene had communicated to Officer Trull that she did not think that Comeaux was intoxicated, the trial court, as the sole factfinder, was entitled to give less weight to that fact after hearing Officer Trull's testimony that the officer who had communicated that opinion did not conduct the investigation. *See Wiede*, 214 S.W.3d at 24–25.

We conclude that the totality of the circumstances in this record, when viewed in the light most favorable to the trial court's ruling and with deference to its findings of fact, shows that Officer Trull had probable cause to arrest Comeaux for driving

10

while intoxicated.  *See Morales Chavez*, 2019 WL 2293566, at \*5–6 (holding that aside from the field sobriety tests that appellant argued were improperly performed, the officer had probable cause to arrest appellant for DWI based on the totality of the circumstances, which included an odor of alcohol on appellant's breath, bloodshot glassy eyes, and his responses and behavior at the scene).  We overrule Comeaux's sole point.

## IV.  Conclusion

Having overruled Comeaux's sole point, we affirm the trial court's order denying the motion to suppress.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  December 31, 2020